**In re A.H. ROBINS COMPANY, INCORPORATED, "Dalkon Shield" IUD Products Liability Litigation.**

No. MDL–211.

United States District Court,
D. Kansas.

Dec. 9, 1983.

720

Bradley Post, Post, Syrios & Bradshaw, Wichita, Kan., for MDL plaintiffs.

Alexander H. Slaughter; McGuire, Woods & Battle; Richmond, Va., for MDL defendant A.H. Robins Company, Inc.

## OPINION AND ORDER CONCERNING FINAL EDITING OF THE VIDEO-TAPE DEPOSITIONS AND EVIDEN-TIARY RULINGS ON OBJECTIONS BY THE PARTIES

THEIS, Senior District Judge.

### I. INTRODUCTION TO THE PROCEEDINGS

On August 19, 1981, this Court ruled that the lead counsel for the plaintiffs could conduct additional discovery within the context of the multidistrict consolidated discovery proceedings relating to the Dalkon Shield intrauterine device. As a part of this discovery counsel for the plaintiffs elected to depose by videotape six employees of the A.H. Robins Company, Incorporated [Robins]: Oscar Klioze; David A. Mefford; Kenneth E. Moore; Robert W. Tankersley, Jr.; Fletcher B. Owen, Jr.; and Allen J. Polon. Additionally, Robins' employee, Albert E. Martin, was noticed for a videotape deposition in the District of Colorado.

The videotape depositions of the six Robins' employees deposed in the District of Kansas were completed between late September of 1982 and late April of 1983, consuming some six weeks. The proceedings were recorded both stenographically by the court reporter, Donald A. Gibson, and on videotape by Video Image Productions of Virginia Beach, Virginia. The un-

dersigned Judge personally and directly supervised these depositions in their entirety. The videotape deposition of Albert Martin was completed on April 8, 1983, and was likewise recorded both stenographically and on videotape. The stenographic notes for all seven depositions were then reduced to written transcripts.

## II. PURPOSE OF THE PRESENT PROCEEDINGS

The purpose of the present proceedings is to produce a set of seven videotape depositions that may be used, at the election of counsel, in the very numerous Dalkon Shield cases currently pending around the country. The multidistrict litigation docket for this matter was created to increase the efficiency of dealing with these individual lawsuits by allowing consolidated pretrial discovery proceedings. In order for this process to work to its full potential, this Court believes that a finished product, ready for direct presentation to juries, must be produced at the multidistrict level.

As might be expected, the examination of the deponents during the depositions was not a particularly smooth process. The parties were, in general, extremely litigious, and hundreds of objections were made. The Court also permitted alternate presentations of some evidence and permitted proffers during the depositions. The result has been a rather ragged set of videotapes, rife with colloquy among counsel, arguments over video technicalities, lengthy scheduling disputes, and other useless lumber and wreckage. It has been clear for some time that the arduous process of editing the videotapes must be undertaken by this Court as a part of the multidistrict proceedings if the high goal of those proceedings is to be met. It is the purpose of this Opinion and Order to explain the breadth, scope, and reasoning employed by this Court in editing the videotapes.

*1. Physical Method of Presenting Objections*

The objections lodged against the deposition testimony and exhibits, overwhelmingly originating with Robins, are extremely numerous, comprising a stack of paper well over an inch thick. The logistical problem of reducing these objections to a comprehensible form in which the Court could intelligently rule on them within a reasonable time was a formidable one. The Court, unfortunately, was compelled to approach the problem on a trial-and-error basis, but the procedure that eventually emerged worked well.

Once the stenographic transcripts were reduced to written hard-copy form, they were examined by lead counsel for both Robins and the plaintiffs. Each party then isolated the testimony it considered to be objectionable and listed that testimony by page and line numbers on a form created for that purpose. An example of this form is attached to this Opinion and Order as Exhibit A.

A court copy of the transcripts was then marked with transparent colored highlighter pens. Testimony objected to by the plaintiffs, as listed on their forms, was marked in yellow, while testimony objected to by Robins, as listed on its forms, was marked in blue. When both the plaintiffs and Robins wanted the same testimony deleted, the overlap of the yellow and blue colors resulted in a green color. Robins also provided the Court with a memorandum in which a shorthand notation system for designating particular objections was established. Exhibits that were objected to were circled when referred to in the transcripts.

When the marking of the transcripts was completed, each word spoken during the depositions was either uncolored, blue-colored, yellow-colored, or green-colored. Uncolored material was considered automatically a part of the final edited videotapes by virtue of not having been objected to by either party. Green-colored material was considered automatically excluded from the final edited videotapes by virtue of the agreement of the parties that it be deleted. Blue-colored and yellow-colored material represented contested objections requiring individual rulings by the Court.

To assist the Court in making these individual rulings, the shorthand notations developed by Robins were marked directly on the transcripts at the start of the objectionable material. Thus, for example, the notation "scope" at the start of a blue-colored passage indicates that Robins is objecting to those questions and answers as outside the scope of the Court's Order of August 19, 1981, reopening the discovery in this matter.

### 2. Method of Ruling on Objections

The sheer bulk of the objections to be ruled on precludes individual commentary on the rationale used by the Court to reach its decisions. The Court has, therefore, elected to rule generically on the objections in a manner similar to the generic way in which the objections were originally made. Robins, as previously explained, provided the Court with a memorandum in which seven generic objections are made to certain testimony and five generic objections are made to certain exhibits. Shorthand notations representing these generic objections were placed directly on the transcripts.

In much the same manner, the Court has marked the transcripts with the word "in" to indicate material that will appear in the edited version of the videotapes—that is, material on which the objections are being overruled—and with the word "out" to indicate material that will be deleted from the edited version of the videotapes—that is, material on which the objections are being sustained. This Opinion and Order will supply the parties with the Court's general assessment of the generic objections that have been made and the rationale behind the result reached with the various types of rulings.

### 3. Post-Editing Procedure

Once the objections to the testimony and the exhibits of a particular deposition are ruled on, the Court will prepare an "Editing Order" directed to Video Image Productions. These individual Orders will identify the deposition and will list the testimony, by line and page numbers, that is to be excluded from the edited master set of depositions over which it shall retain control. One copy of the master set shall be returned to this Court and filed with the Clerk.

Plaintiffs interested in obtaining copies of the edited master tapes shall make application for such copies through this Court in the manner established in this Court's Order of April 13, 1983. On certification that the requisite fee has been paid, the Court will order Video Image Productions to prepare the copy and to forward it directly to the requesting party. Court reporter Donald Gibson will also be ordered to prepare copies of the hard transcripts and of the deposition exhibits and to forward them directly to the requesting party. All of these post-editing procedures are subject to modification in the event lead counsel for Robins and the plaintiffs agree to modify the procedures and embody the changes in a written pretrial order.

## III. EVIDENTIARY RULINGS

In this section of this Opinion and Order the Court will set down the general principles used by it in ruling on the evidentiary objections to the deposition testimony and exhibits. Two preliminary points must be made concerning these general principles.

The first point is that this Court has determined the validity of the objections pursuant to the principles embodied in the Federal Rules of Evidence. Even though federal judges have been known to disagree, the rulings would presumably have been the same regardless of the particular federal court in which they were made. To that extent, the edited videotapes should enjoy nationwide application in cases brought in the United States District Courts. State court cases, of course, must proceed under state rules of evidence, which may or may not be identical to the Federal Rules of Evidence.

The second point concerns the nature of rulings on objections that, at this pretrial stage of the proceedings, are basically anticipatory. The Court has not found this to be a problem. Although the nature of

these proceedings is unique and the Court is at somewhat of a disadvantage in having to rule on the objections without the benefit of hearing adversary evidence, the part that these depositions are to play in the full-blown adversary trials is clear and the issues are reasonably well-defined. The Court notes with some encouragement that its evidentiary rulings are in accord with the directives of appellate courts that have reviewed the records of actual trials concerning the Dalkon Shield. See, e.g., *Hilliard v. Robins*, 148 Cal.App.3d 374, 196 Cal.Rptr. 117 (1983).

### A. Deposition Testimony

Robins' seven generic objections to the deposition testimony will be detailed and discussed in the order presented by Robins. See Dk. No. 590, at 3–6.

### 1. Relevancy

■ This generic objection, predicated on Rules 402 and 407 of the Federal Rules of Evidence, maintains that the testimony is not probative of any fact or issue of consequence and is, therefore inadmissible. In ruling on the individual objections, the Court has relied heavily on the previous first-hand experience gained in supervising the pretrial discovery and the depositions as a whole in this MDL case. The Court has also relied on its predisposition to regard relevance, like beauty, as something primarily found in the eye of the beholder, and the best judge of relevance is the proponent—not opponent—unless it appears to the Court to be clearly extraneous.

It is hornbook law that the definition of "relevant evidence" in Rule 401 is broad and the hurdle presented by it exceedingly low. Accordingly, any testimony tending to make any fact either directly or indirectly concerning the Dalkon Shield or its effects more or less probable has been liberally admitted. The Court has been mindful, however, that many other facts have some consequence in the determination of the many actions in which these depositions will be used. For example, collateral facts tending to show the bias or prejudices of the deponents, or the existence of notice to

Robins, are clearly relevant as well, and have also been liberally admitted.

The Court is, in general, unimpressed with the argument that the testimony is unduly prejudicial, confusing, or a waste of time. The deponents are all highly educated individuals holding positions of considerable responsibility and authority within Robins' corporate structure. The witnesses took excellent care of themselves, refused to be intimidated or misled by the questions they were asked, and freely admitted their ignorance of topics with which they were unacquainted. This Court's supervision of the proceedings was sufficiently tight to keep them on track. The vast majority of the testimony was relevant and has been preserved in the final edited copy.

### 2. Hearsay

■ This generic objection, predicated on Rules 801, 802 and 805 of the Federal Rules of Evidence, maintains that the testimony constitutes inadmissible hearsay not subject to any exception. In examining the subjects of the individual objections, however, the Court has found that most of them constitute testimony that is not hearsay at all. Under Rule 801(d)(2)(D),

> A statement is not hearsay if—The statement is offered against a party and is ... a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship....

The Advisory Committee on Proposed Rules clearly views this category of statements as a broad one whose requirements should be liberally construed.

> No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstances, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

It appears to this Court that the requirements of Rule 801(d)(2)(D) are few and straightforward:

> Once agency, and the making of the statement while the relationship continues, are established, the statement is exempt from the hearsay rule so long as it relates to a matter within the scope of the agency.

4 Weinstein's Evidence ¶ 801(d)(2)(D)[01]. Under these requirements, any statement made by employees of the A.H. Robins Company, while they were employees of that company, concerning any aspect of those employees' involvement with the Dalkon Shield project, simply are not hearsay at all. There is, therefore, no need to fit those statements within any hearsay exception as a prerequisite to offering them as substantive evidence of the truth of the matters asserted. As mentioned by the Advisory Committee, there is also no need to demonstrate that the declarant is not expressing an opinion or that he has first-hand knowledge of the facts he is relating. The continuing employment relationship and the connection between the statement and the Dalkon Shield project are basically all that is necessary.

While this exclusion from the definition of hearsay may appear to be a gaping hole in the rule at first blush, further consideration shows it to be an absolute necessity in cases like the Dalkon Shield cases. Robins, as a corporate defendant, is an artificial person incapable of speaking or acting alone. It is also a large and highly sophisticated corporation in which the decision-making authority is fragmented into numerous specialized departments and subdivisions, each with its own internal lines of authority.

■ Under these circumstances, it is not at all unusual for the hard questions posed in Dalkon Shield cases to be unanswerable by anyone from Robins. The project manager for Dalkon Shield explains that a particular question should have gone to the medical department, the medical department representative explains that the question was really the bailiwick of the quality control department, and the quality control department representative explains that the project manager was the one with the authority to make a decision on that question. If all of the intra-corporate communications between these individuals at the time the operative decisions were made are cloaked with inadmissibility on the basis of the hearsay rule, the corporate form has succeeded in not only protecting its shareholders, but also itself, from liability for its mistakes. A simple shrug of the shoulders by a parade of corporate decisionmakers would constitute a complete defense. This Court simply cannot countenance such a result. While there is undoubtedly some merit to this "right hand does not know what the left hand is doing" claim in the context of the levels of familiarity enjoyed by the department heads concerning their own and other departments, the simple fact remains that all of the deponents worked for one corporation in a unified effort to produce and market one product—the Dalkon Shield.

■ Several of the hearsay objections are premised on the hearsay-within-hearsay prohibition of Rule 805. The Court also finds this argument generally unpersuasive, because it is applied primarily to statements made by outsiders to Robins' employees, who then repeated or introduced those statements into the corporate decisionmaking process. Rule 805, strictly speaking, is not applicable to these statements because the statements of the Robins' employees are not hearsay at all under Rule 801(d)(2)(D). Furthermore, even if it is assumed that the statements of the outsiders are hearsay requiring a recognized exception to the hearsay rule as a prerequisite to admissibility, the statements are usually admissible under the general exception of Rule 803(24). The statements of the outsiders have a circumstantial guarantee of trustworthiness inasmuch as they were received and assessed by Robins' employees as valuable input concerning the performance of the Dalkon Shield or its component parts, and were produced directly from Robins' corporate files. Because

the statements either directly or collaterally involve the Dalkon Shield, they are material. The statements are more probative than other evidence that can be procured through reasonable effort because the statements themselves constitute the real-world input received by Robins concerning the Dalkon Shield. Finally, the interests of justice and the purpose of the rules are best served by admitting these statements and allowing the deponents to explain why they did or did not feel it necessary to respond to this input.

■ Robins cites *Weinstein's Evidence* for the proposition that "gossip does not become reliable merely because it is heard in an office rather than a home." 4 Weinstein's Evidence ¶ 801(d)(2)(D)[01]. The Court has some difficulty in construing statements that were received, analyzed, and investigated by Robins as "gossip." The statements were directed to Robins by, for the most part, doctors whose patients had had problems with the Dalkon Shield, or the patients themselves. Perhaps some of the tragic consequences with which the Dalkon Shield cases are concerned could have been avoided had Robins considered these statements as something more than mere gossip when they were made.

In summary, the Court finds that Robins' hearsay objections are lodged against testimony that either is not hearsay at all under the facts and circumstances, or is subject to an exception to the hearsay rule if it is, in fact, hearsay. The vast majority of this testimony has been preserved in the edited videotapes.

### 3. Document Reference and Reading

■ Robins' objection to document reference and reading is primarily an objection to the authentication of the various exhibits used to examine the deponents. A frequent occurrence in the course of the depositions was the reading of a document or portions of it, followed by a question as to whether the reading was correct. In most instances the information from the documents provided the subject matter for further interrogation of the deponents or direct impeachment material, but in some cases the information was provided as unqualified substantive evidence.

The Court sees no problem with these procedures. As previously explained, the departmentalized nature of the corporate defendant creates certain problems in the introduction of evidence produced by Robins from its corporate files. Obviously, not every individual who ever wrote a document in the context of his employment with Robins was deposed. For that reason, it was occasionally necessary to question a deponent about a document he did not author or receive to accomplish the completely legitimate goal of emphasizing a particular piece of documentary evidence. The Court does not believe that the complexity of Robins' corporate structure should provide Robins with a rationale for compelling all of the documentary evidence in these cases to be handed to the jury as mute and unexplained sheets of paper.

As for the authenticity of the documents themselves, the Court notes that virtually all of the documents used during the depositions were produced by Robins in the course of discovery from Robins' own corporate files. Robins' unique numbering system for these documents appears on them. Most of the documents are official publications provided to Dalkon Shield users or doctors, or memoranda between Robins' employees on Robins' stationery. None of this material appears to be hearsay, Rule 801(d)(2)(D), and the vast majority of it was identified as true and correct copies by one or more deponents. The Court perceives no authentication problems with this material.

### 4. Personal Knowledge and Opinion

These objections are predicated on the theory that the deponent lacks personal knowledge of the subject matter, Rule 602, or is unqualified to express an opinion on the subject, Rules 701 and 702. In practice, this is but another avenue to strictly limit the interrogation of the deponents to the narrow confines of the particular departments in which they worked.

■ The simple fact remains that these deponents all worked for the same company, on the same project, and communicated freely with one another. The deponents are, furthermore, very sophisticated in their oral interrogation skills. The Court cannot recall a single instance in which a deponent speculated on a topic about which the deponent had no personal knowledge whatsoever. Granted, the level of familiarity with the operations and procedures of other departments varied from deponent to deponent, but they were quick to say they did not know when they did not know. Additionally, the mere fact of their ignorance on a particular topic is often relevant and material in unraveling the corporate decisionmaking process.

■ The Court also cannot recall a single instance of a lay witness expressing an opinion outside the parameters of Rule 701. Again, the levels of expertise in various subject areas differed greatly between deponents, but each individual in the corporate team was at least marginally conversant with the work done by other members of the team in producing and marketing the Dalkon Shield. For example, to the extent that a non-medical-doctor deponent knew of the work done in Robins' medical department, that non-medical-doctor has a perception that is helpful to a clear understanding of his testimony regarding the influences on his own actions. Such testimony, even if couched in the terms of an opinion, is clearly admissible.

### 5. Mode of Interrogation

This objection, made very frequently during the course of the depositions themselves, is predicated on the impropriety of asking questions that are argumentative or assume facts not in evidence. The Court exercised a very high degree of control over these objections during the depositions and eliminated the few truly argumentative questions at the time.

■ Objections concerning the assumption of facts not in evidence are problematical at this stage in these proceedings. Clearly, there are going to be many facts not formally introduced into evidence during pretrial depositions. The propriety of questions assuming these facts can only be determined with assurance in the context of a trial where those facts will be formally introduced if it is possible to do so. The Court is understandably very reluctant to exclude these questions now, without the benefit of a fully developed factual background. Suffice it to say generally at this juncture that the Court received assurances from counsel during the depositions that the necessary facts had been or would be brought in, and that the Court was vigilant in excluding any questions of the "when did you stop beating your wife" variety that may have been asked.

### 6. Prior Deposition Testimony

■ This objection asserts that reference to or reading of prior deposition testimony constitutes inadmissible hearsay. This assertion is patently without merit. Rule 801(d)(1)(A) excludes prior sworn testimony from the definition of hearsay when the prior testimony is inconsistent with present testimony. This Court is unwilling to determine inconsistency as a matter of law, inasmuch as the existence and extent of any inconsistency is a factual question more appropriately left to the triers of fact. The Court believes that the juries that will view the edited videotapes will be in a far better position to determine, in the context of a completely developed factual setting, whether any inconsistencies in fact exist.

### 7. Beyond the Scope

■ This objection is one of the most common ones, and is predicated on the supposedly narrow scope of the reopened discovery. When this Court reopened discovery in this matter on August 19, 1981, three "appropriate" areas of discovery were listed:

> "(1) circumstances surrounding the issue of a so-called "Dear Doctor" letter by A.H. Robins Company, Inc., on September 25, 1981;

(2) evidence relating to claims that deterioration and degradation of the tail string occur during use; and

(3) adverse reaction reports received subsequent to previous disclosures."

Robins now seeks to exclude all testimony and exhibits that deviate even slightly from these three subject areas.

This Court is convinced that the unique purpose of these videotape depositions would be thwarted by placing narrow subject-matter restrictions on them. The first round of discovery in these proceedings was not recorded on videotape, and was often incomplete or less precise than the videotape deposition. It seems likely to the Court that the videotapes produced here will be used as the sole MDL discovery product in many cases, simply because the playing of the videotapes will be more interesting to a typical jury than the reading of transcripts by lawyers in the courtroom, and will certainly be easier and more convenient.

Considering these facts, it appears completely appropriate to strive towards making the edited videotape depositions self-contained presentations. To accomplish this goal, this Court permitted background and collateral issues covered in the earlier discovery to be re-covered during the videotape depositions. Due to the fallibility of human memory—counsel and court—as to previous large doses of evidentiary material and the ingenious propensity of counsel to quibble over the meaning of words and phrases, this Court declined to make the videotape depositions an evidentiary straight-jacket. The result has been a discovery product of some completeness that should be extremely useful in the many trials in which it will be used. The scope of the depositions as actually taken was carefully controlled by the Court to achieve this final result.

The Court notes that its Order of August 19, 1981, is interlocutory in nature. As such, it is subject to the provisions of Rule 54(b) of the Federal Rules of Civil Procedure, which declares that:

"any order ... however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

In light of this provision, the Court believes that the Order of August 19, 1981, should be revised to reflect that the discovery in these proceedings is to be reopened, as of that date, to the full extent and scope actually covered in the videotape depositions that have been completed. The Court further notes that the reopened discovery, to the extent permitted by the revised Order, has been completed, and no further discovery shall be allowed without express permission from this Court.

## B. Deposition Exhibits

Robins' five generic objections to the deposition exhibits will be detailed and discussed in the order presented by Robins. See Dk. No. 590, at 6–16.

### 1. Hearsay

 This objection simply asserts that the documents presented as exhibits are inadmissible hearsay. As previously discussed in section III(A)(2) of this Opinion and Order, the Court considers the vast majority of the exhibits, which were prepared by Robins' employees in the course of their employment on the Dalkon Shield project, to not be hearsay at all, Rule 801(d)(2)(D). In those rare instances where hearsay is present in a document, it is subject to the general exception, Rule 803(24), to the hearsay rule. The documents are simply the written statements of Robins' employees, to which the analysis previously provided in reference to the oral testimony is fully applicable. The objection is simply misplaced.

### 2. Not Business Records

 This objection argues that the exhibits do not fall within the business records exception, Rule 803(6), to the hearsay rule. Because the Court does not regard

the exhibits as hearsay and does not predicate the admission of the exhibits on this exception, this objection is irrelevant.

### 3. Occasional Memoranda

■ This objection argues that the so-called "occasional" memoranda between Robins' employees are not covered by the business records exception to the hearsay rule. Again, because the exhibits are not hearsay and the Court has not relied on the business records exception in admitting them, this objection is irrelevant.

### 4. Not Admissions of a Party Opponent

■ While recognizing the difficulty in making anticipatory objections in an intelligent fashion, Robins asserts under this heading that the deposition exhibits must satisfy several discreet elements to qualify as admissions under Rule 801(d)(2)(D). With this the Court agrees. Robins goes on to argue, however, that one of the elements is that the documents must clearly assert the truth of some proposition to qualify as admissions, citing *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.*, 505 F.Supp. 1190 (E.D.Pa.1980). The *Zenith* court held that the plaintiffs, as proponents of the documentary evidence, should bear the burden of establishing that the documents contain assertions and of establishing what facts are asserted, 505 F.Supp. at 1242.

This Court can agree with the grudging analysis of the *Zenith* court only to the extent that the peculiar nature of the documents in that case required it. The plaintiffs in *Zenith* sought to introduce the personal diaries of certain Japanese executives as admissions against their corporation. The Court characterized the diary entries as mostly incomprehensible and as consisting primarily of statements or thoughts of third parties, which the diarists had merely recorded, 505 F.Supp. at 1240. That situation is substantially different and distinguishable from the one presented by these proceedings, where work-related statements were memorialized by Robins' employees in the course of their day-to-day intercommunications regarding their activities on the Dalkon Shield project and placed in the Robins' corporate files.

The Court must emphasize again the importance of presenting a complete factual overview of Robins' fragmented and departmentalized decisionmaking process to the finders of fact in the Dalkon Shield cases. Statements of Robins' employees from all departments—whether couched in terms of absolute belief, suspicions, or hunches—are relevant in ascertaining what the corporation did in reference to the Dalkon Shield and how it reacted to reports coming in to the corporate system from outside. This Court believes it would be a miscarriage of justice to exclude this relevant and important evidence because it does not clearly assert the truth of every word, in the same way that the statement "[our wolf] bit a child that came in our back yard," asserts the truth of every word contained in it. See *Mahlandt v. Wild Canid Survival & Research Center, Inc.*, 588 F.2d 626 (6th Cir.1978); *Zenith*, 505 F.Supp. at 1241. The simple analysis required by statements of individuals concerning readily observed factual occurrences cannot be blindly applied to the statements of the employees of a large and sophisticated corporation as they make policy decisions with nationwide impact.

While the plaintiffs in these cases clearly bear the burden of demonstrating that these exhibits are authentic, material and relevant, it should be remembered that admissions under Rule 801(d)(2)(D) are *excluded* from the definition of hearsay. The plaintiffs are, therefore, under no burden to take extra steps to obtain the admission of these documents, as they would be if it were necessary to fit them within some exception to the hearsay rule. These documents appear, on their faces, to fit within the requirements of Rule 801(d)(2)(D). The burden must, therefore, fall on Robins to substantially controvert the status of these documents as admissions. Only when Robins shows that the documents are not statements, or were not made by Robins' employees in the scope of their employment, must the plaintiffs come forward with addi-

tional evidence to establish those facts. In short, this Court's admission of the exhibits should create a strong presumption in favor of their admissibility, which Robins must bear the burden of overcoming.

### 5. Foundation and Authentication

█ The authentication issue has already been explored in some detail. See Section III(A)(3) of this Opinion and Order. As noted there, the vast majority of the exhibits came directly from Robins' corporate files, bear Robins' unique document numbers, and are on Robins' stationery. Most of the documents were conceded to be accurate copies of the originals by one or more deponents. While individual foundations for these documents in the context of each trial will be necessary, this Court has made a careful and reasoned determination that each of the documents included in the edited versions of the videotapes is admissible on the current state of the record. Such a determination creates a presumption in favor of admissibility that Robins must bear the burden of overcoming.

## IV. CONCLUSION

█ In conclusion, this Court can only reiterate its strongly held conviction that the entirety of the multidistrict litigation proceedings held in this matter to date will have been in vain if. the product of those proceedings—the edited videotape depositions of seven Robins' employees—are subject to massive de novo attack and review each time they are utilized in a Dalkon Shield case. While the procedure used has had the laudatory collateral effect of freeing those Robins' employees from the burden of becoming lifetime litigators, the massive amounts of time and energy expended in the creation of these edited videotapes will have been utterly disproportionate to the benefits received if that is their only effect. Only if this Court's struggles save other courts and other litigants from repeating the precise same struggles over and over again will the process have been worthwhile.

The evidentiary rulings of this Court are based on an intimate familiarity with the subject matter, the parties, and the litigation, and based on over five years of previous generic discovery supervision of the hundreds of transferee cases as directed by the MDL Panel. This Court has had the benefit of repeated live oral argument on these objections, as well as the benefit of personal involvement in every stage of the taking and editing of the depositions. The Court heard every word of the depositions when those words were originally spoken, and has reread every word of the depositions in the process of ruling on the hundreds of discreet objections. The Court also has the benefit of seventeen case files comprising over six hundred docket entries, all of which the Court has personally supervised. The parties have had a full and fair opportunity to ventilate their objections and grievances, which they have used to an extent quite unanticipated by the Court. Absent compelling circumstances, the edited videotapes should be presented directly to the triers of fact in the Dalkon Shield cases without further objection, argument, or judicial intervention.

IT IS THEREFORE ORDERED that Video Image Productions, Post Office Box 62506, Virginia Beach, Virginia 23462, prepare edited videotape masters in accordance with the individual Editing Orders to be filed subsequently by this Court.

IT IS FURTHER ORDERED that Video Image Productions make and distribute copies of those edited videotape masters only on the order of this Court, pursuant to the Order entered April 13, 1983.

IT IS FURTHER ORDERED that the Clerk of this Court, when mailing copies of the Orders referred to in the preceding paragraph to the plaintiffs in individual Dalkon Shield cases, also mail to those plaintiffs a copy of this Opinion and Order, until further order of the Court.

IT IS FURTHER ORDERED that counsel for all plaintiffs and for defendant A.H. Robins Company, and kindred defendants, are informed that this Court has directed that an edited copy of the videotape depositions, along with this Order and companion editing orders, be transmitted to the Judicial Panel on Multidistrict Litigation, 1120 Vermont Avenue, N.W., Washington, D.C. 20005, to indicate completion and compli-

ance with its several orders to the transfer-
or court.

EXHIBIT A

DEPOSITION:

VOLUME: TAPE:

page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____
page ____, line ____, through page ____, line ____