Myles OSTERNECK, et al., Plaintiffs,

v.

E.T. BARWICK INDUSTRIES, INC., et al., Defendants.

Civ. A. No. C75–1728A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 18, 1984.

On Motion for Admission of Portions
of Report Nov. 29, 1984.

Paul Webb, Harold Daniel, Keith Weiner, Atlanta, Ga., for plaintiffs.

Richard Kirby, John Parker, Earl May, Atlanta, Ga., Phillip Russ, Amarilla, Tex., for defendants.

## ORDER OF COURT

**HORACE T. WARD, District Judge.**

Defendants Ernst & Whinney, Eugene T. Barwick, and E.T. Barwick Industries, Inc. seek an order in limine preventing the plaintiffs from using at trial, for any purpose, the Report of the Special Review Committee dated September 28, 1977 and the Supplemental Report of the Special Review Committee dated December 31, 1977 (hereinafter "Report of the Special Review Committee" or "Report"). For the reasons which follow the court has concluded that the Report is inadmissible hearsay and is unfairly prejudicial to the defendants. The plaintiffs may not introduce the Report of the Special Review Committee into evidence in support of their case-in-chief.

## BACKGROUND

On or about August 10, 1976, the Securities and Exchange Commission ("SEC") filed in the United States District Court for the District of Columbia a complaint for injunctive and ancillary relief. The complaint named as defendants E.T. Barwick Industries, Inc. and Messrs. Eugene T. Barwick, W. Baer Endictor, Buford Talley, A. Wayne Hise, J. Marcus Pate, and H. Lee Roper. The SEC's complaint alleged that the defendants had engaged in certain acts, practices, and courses of business that violated the Securities Exchange Act of 1934, and certain rules promulgated thereunder. Defendant Ernst & Whinney was not a defendant in the SEC proceeding.

Simultaneous with the filing of the SEC complaint, there was also filed a negotiated "Consent and Undertaking of E.T. Barwick Industries, Inc." ("Consent"). One of the conditions of the Consent was that the board of directors of the company would create a special review committee comprised of individuals satisfactory to the SEC "to investigate and report to the full Board of Directors on the matters alleged in the Commission's Complaint and with respect to all other relevant matters." Report, at 5.

During September of 1976, the board of directors of the company selected Messrs. J. Keith Louden, A. DeLoach Martin, Jr. and James E. Fuchs, independent members of the company's board of directors, and Mr. Steven P. Kessler, who had no connection with the company, as committee members. Mr. W. Homer Drake, Jr. was selected as special counsel to the Committee, and Price Waterhouse & Company was engaged as accountants to assist in the investigation. The Committee members and the special counsel were all approved by the SEC. Report, at 7.

The Committee proceeded to conduct a far-reaching investigation that included the allegations in the SEC complaint and "other areas of investigation which are deemed to be of reportable significance by the Committee." Report, at 18–19. The Report includes both findings and recommendations of the Special Review Committee. The Report does not delineate the basis for any of its recommendations. Rather, each recommendation is simply a statement with no indication of what evidence in the Report was being relied on to support the recommendation. Report, at 194–200.

The Consent only required that the Committee's Report be presented to the company's board of directors. The SEC had no involvement whatsoever in the drafting or review of the Report or in the implementa-

tion, if any, of the recommendations in the Report.

The initial Report was submitted to the company's board of directors on or about October 8, 1977. Subsequent to the submission of the Report, the SEC requested the Committee to continue its investigation through and including December 1, 1977, and submit any supplemental report that it deemed appropriate to the board of directors on or before December 31, 1977. The Committee did submit a supplemental report to the board of directors on December 31, 1977. The Committee made no new recommendations in the supplemental report. Supplemental Report, at 23. Shortly thereafter, the corporation sent copies of the Report to all of its shareholders.

The Report is based primarily on evidence . obtained by the SEC in its prior investigation, and which was made available to the Committee. The Committee did obtain documents from various other sources and interviewed witnesses. The Committee also obtained the depositions of Messrs. William T. Bodenhamer, Jr., Guy-Kenneth O. Osterneck, and Myles Osterneck, that were taken in the present case and which the Committee stated "were somewhat useful to the Committee." Report, at 9. It appears that all of the information in the Report has been made available to the plaintiffs in this case and comprises approximately 20–25 file boxes.

The Committee had no subpoena power to compel the presence of witnesses or the production of information. The SEC also specifically declined to assist the Committee in its investigation by exercising its subpoena power to compel the presence of witnesses before the Committee or the production of documents. Report, at 13, 17.

During the course of its investigation, the Committee was unable to obtain some documents from the company because they were unavailable. Report, at 11–12. The Committee was also unable to locate many witnesses (Report, at 17), and some people refused to talk to the Committee. Report, at 145. When the Committee did conduct an interview the witness was not under oath or subject to any penalty for perjury, and only partial transcripts were made of the interviews. There was also no opportunity to cross-examine any witness by counsel for the witness or any interested third party. Indeed, interested third parties did not even know who was being interviewed or when or where they were being interviewed. The Committee also made no attempt to vouch for the accuracy or credibility of the witnesses it interviewed, and did not know if the documents it reviewed were authentic. Report, at 19–20. As a result, the Committee openly acknowledged its lack of authority and resultant inability to conduct a full and complete investigation, and cautioned that people should be wary of using the Report for any authoritative purpose because of the incomplete information on which the Report is based. Report, at 19–20.

## DISCUSSION

Defendants seek to exclude the Report of the Special Review Committee from evidence under Rules 802 (hearsay rule) and 403 (exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time). Plaintiffs contend that the Report is not hearsay or, in the alternative, that it is hearsay within an exception to the hearsay rule. Further, plaintiffs contend that exclusion under Rule 403 is not appropriate.

### A. Hearsay

■ Hearsay is a statement, other than one made by the declarant while testifying at trial, which is offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c). The Report at issue here fits this definition of hearsay—it is an out-of-court statement which is being offered for the truth of the matter asserted. A statement falling within the definition of hearsay is not admissible unless it is "not hearsay" under Rule 801(d) or unless it is within one of the exceptions to the hearsay rule set forth in Rule 803.

1. Is the Report "not hearsay" within the meaning of Rule 801(d)?

Plaintiffs argue that the Report of the Special Review Committee is admissible as non-hearsay under Rule 801(d)(2) as an admission of defendant Barick Industries, Inc., a party-opponent. Rule 801(d) provides, in relevant part:

A statement is not hearsay if—

The statement is offered against a party and is . . . (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship.

Fed.R.Evid. 801(d)(2)(C)–(D).

The Special Review Committee was authorized by defendant Barwick Industries to make the statement (the Report) at issue. The Committee was assigned the specific responsibility to investigate and report. The Report was made during the existence of such agency.

Although investigative reports have been held to be admissible as non-hearsay admissions within Rule 801(d)(2), see, e.g., *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir.1980), this does not mean that all reports by corporate agents to their superiors

come within the scope of the rule. The strongest cases relied on by plaintiffs supporting admissibility under Rule 801 are *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292 (9th Cir.1983) and *In re A.H. Robins Co., Inc.*, 575 F.Supp. 718 (D.Kan.1983). In both of those cases, employees of the corporate defendant were authorized to report to their superiors on some aspect of the operations of the company. In *Robins*, the employees received and assessed outside (obviously hearsay) statements which were included in the report. The *Robins* court refused to exclude such statements. 575 F.Supp. at 724–25. What distinguishes those cases from the instant case, however, is the fact that the Special Review Committee gathered a lot of information, much of which was based on unauthenticated documents or uncorroborated testimony which was simply incorporated into the Report. The Committee did not assess, evaluate, or otherwise adopt the testimony reported.[1] In *Robins*, by contrast, the "rumors" reported by company employees were received as input on the performance of their product—a key fact in the court's analysis. *Id.*

Clearly, trustworthiness is *not* a requirement under Rule 801. See Advisory Committee Notes to Fed.R.Evid. 801(d)(2). When a party makes a statement, it cannot

---

1. The Committee specifically noted:

The findings of the Committee which follow in Part II of this Report are reported from the statements of witnesses and documents obtained from various sources. The Committee could not determine independently the genuineness and authenticity of each document to which reference is made in this Report. In most instances, the Committee had access only to duplicate copies of documents, many of which (correspondence, for example) did not bear actual evidence of execution. The Committee found in files that apparently were maintained in the regular course of business many copies of letters which did not indicate by signature that the letters were in fact executed.

The Committee does not vouch for the accuracy or credibility of its witnesses or for the genuineness or authenticity of the documents. It can only report what witnesses stated and what documents contained. Corroboration of information was done where possible and feasible, but in many cases witnesses who

could corroborate, deny, or clarify statements of others could not be found or refused to give statements.

Invariably in investigations of this scope, there will be conflicts in statements about minor issues as well as significant ones. We do not undertake to resolve disputes of fact, but simply to point them out. Nor do we undertake to apply complex rules of evidence as to certain statements and conclude that the evidence of witness A is of great probative value and that the statements of witness B would be inadmissible in Court, and therefore are not reliable. We are aware of the pitfalls of hearsay and rumors and have tried to determine from each witness the extent of his personal knowledge of the facts he or she related to us. To the extent possible, the findings will report the statements made by witnesses and what is found in documents, leaving conclusions to be drawn by the readers concerning disputes, as well as the value of what was stated.

Report, at 19–20.

later seek exclusion of that statement by arguing it never had an adequate opportunity to cross-examine the declarant at the time the statement was made, for it was that declarant. Issues of the reliability of admissions can be raised at trial by efforts to rebut or explain the prior admission. However, Judge Weinstein and Professor Berger have cautioned that hearsay within an agent's statement (i.e., reports of rumors) is best excluded under Rule 805 or Rule 403 because to hold otherwise might impede the communication of information from agent to principal. See Weinstein and Berger, *Weinstein's Evidence*, ¶ 801(d)(2)(C) [01] at 801–157 and 801–158 (1984). Surely Weinstein and Berger's views can be extended too far and can unduly limit the scope of Rule 801(d)(2). However, the court is of the opinion that a proper balance can be struck between the views of Judge Weinstein and Professor Berger and those of Judge Theis in *Robins:* the simple act of accumulating and reporting inadmissible information to a superior does not bring it within Rule 801(d)(2), but the "digestion" and assessment of that information with action taken thereupon is sufficient to bring it into the realm of an admission or a vicarious admission. While the status of the information (i.e., how much Barwick Industries used it, relied on it, or adopted it) in this case is a complex factual one, it seems that the Report has never risen to the level of an admission under Rule 801—or it is better excluded under either Rule 805 (double hearsay) or Rule 403 (unfair prejudice, etc.) as Weinstein suggests.

2. Is the Report within one of the recognized exceptions to the hearsay rule?

Since the Report cannot be considered "not hearsay" under Rule 801, the Report is hearsay. Hearsay evidence is inadmissible unless it falls within one of the exceptions to the hearsay rule in Rule 803 or Rule 804. Plaintiffs assert that the court may admit the Report into evidence under Rule 803(6) (the business records exception), Rule 803(8) (the public records exception), or Rule 803(24) (the catch-all excep-

tion). The court will address these arguments seriatum.

a. Rule 803(6)—Business Records Exception

■ Rule 803(6) allows into evidence records, reports and memoranda made in the course of regularly conducted business activity if it was the regular practice of that business to make the record, report or memorandum. It might be questioned whether the Report of the Special Review Committee is a business record within Rule 803(6) because of its special nature. Many authorities argue against construing this exception so narrowly, however. See, e.g., *Minnesota Mining and Manufacturing Co. v. Ansul Co.,* 9 F.R.Evid.Rep. 698 (E.D. Wis.1981). Assuming that the Report qualifies as one which was kept in the course of a regular business activity pursuant to the regular practice of that business activity, the court concludes that the Report still cannot be admitted under Rule 803(6). Rule 803(6) has an explicit trustworthiness component. The doubt as to the trustworthiness of the Report as a business record, noted above, pushes toward its exclusion.

b. Rule 803(8)—Public Records Exception

■ Rule 803(8) allows "factual findings resulting from an investigation made pursuant to authority granted by law" to be admitted for the purpose of proving the truth of the matters asserted in those findings. In this case, it is not clear whether the Report is really one "made pursuant to authority granted by law," as is contemplated by Rule 803(8). Certainly, it is not a typical government investigation; it may even be stretching the circumstances surrounding the issuance of the Report to say that the investigation was quasi-governmental. In addition, it is questionable whether the Report truly constitutes "factual findings" as is intended under Rule 803(8). While Part II of the Report is labelled "Findings," the Report—and certainly the Committee's perception of the Report—does not contain "findings" in the

sense of any assessment or weighing of the evidence gathered. The Committee explicitly states that it did not make any credibility determinations. Thus, the Report does not appear to be the type of "evaluative" report contemplated by Rule 803(8)(C).

In addition, and not unrelated to the last point, Rule 803(8) has an explicit and specific trustworthiness requirement. Although the burden is on the defendants to show lack of trustworthiness, the concerns as to the reliability of the Report noted above require exclusion of the Report as not within 803(8) on this basis as well.

c. Rule 803(24)—Catch-All Exception

 Rule 803(24) is designed to allow the admission of hearsay evidence which has a high indicia of reliability, but does not fit under any other specific exceptions. Rule 803(24) is intended to encourage the growth and development of federal evidentiary law by giving courts the flexibility to deal with new evidentiary situations which may not fit neatly into one of the twenty-three specifically enumerated exceptions. *United States v. Mathis,* 559 F.2d 294 (5th Cir.1977). The key to this exception is the presence of sufficient "circumstantial guarantees of trustworthiness." The overall lack of trustworthiness of this Report argues against permitting it to be used at trial under Rule 803(24).

**B. Unfair Prejudice**

Rule 403 gives the court the discretion to exclude evidence which is unfairly prejudicial to one party or is likely to confuse or mislead the jury. The Report would seem to have both of these qualities. Much of the basis for this conclusion stems from the serious questions as to the reliability of the Report noted above. However, these concerns are aggravated by the fact that the Report may unduly direct the jury's attention to the information it contains, diminishing proper consideration of other evidence in the case by the jury.

 The burden of showing that exclusion under Rule 403 is warranted is upon the defendants. While the case of *City of Cleveland v. Cleveland Electric Illuminating Co.,* 538 F.Supp. 1257 (N.D. Ohio 1980), relied on by defendants is factually distinguishable, much of Judge Krupansky's reasoning and interpretation of Rule 403 in that case is applicable to the instant case. See 538 F.Supp. at 1260–61. Although the Report does not claim to resolve disputed facts but instead leaves all conclusions to the reader and therefore may not "invade" the province of the jury as plaintiffs contend, its summary nature pushes against it being viewed as a document which is likely to be considered as simply one more piece of evidence in the case. It is impossible to tell what a jury will or may do with evidence, but the potential for unduly influencing the jury's decisionmaking seems substantial and requires exclusion under Rule 403.

**CONCLUSION**

For the above-stated reasons, plaintiffs may not place the Report of the Special Review Committee into evidence in support of their case-in-chief. The court wishes to make clear that it is not ruling out possible use of portions of the Report by either party in support of their case or for impeachment purposes. This order delineates the theoretical underpinnings of the court's decision to exclude from evidence any use of the Report in its entirety. Beyond exclusion of the Report as a whole, the court DEFERS ruling upon the admissibility of portions of the Report until the appropriate instances at trial wherein the court may specifically assess the propriety of any offered evidence, and the soundness of objections thereto, in the context of evidence theretofore adduced. If any party plans to so use portions of the Report, the court must be given adequate advance notice so that objections may be made and an appropriate evidentiary ruling may be made under the particular circumstances presented to the court.

**ON MOTION FOR ADMISSION OF PORTIONS OF REPORT**

The plaintiffs are seeking to have admitted into evidence in the above case portions

of the Special Review Committee's report and other related materials consisting of financial information in the form of reports or summaries, together with certain work papers prepared by the accounting firm of Price Waterhouse as a part of its engagement with the Special Review Committee. In its Order of October 18, 1984, the court granted defendants' motion in limine, holding that the report of the Special Review Committee, *as a whole*, was not admissible. The underpinnings of the court's decision included a finding that the report as a whole constituted hearsay and was not subject to any of the exceptions to the hearsay rule. The report was also excluded under Fed.R.Evid. 403 because its use at trial would be unduly prejudicial to the defendants. At the same time, the court left open the possibility that *portions* of the report might be admissible for various purposes upon a proper showing. That is the issue now before the court with respect to certain documents tendered by the plaintiffs.

The materials being tendered by the plaintiffs fall into two categories. The first category consists of financial documents or charts that were contained in or attached as exhibits to the Special Review Committee's report, being plaintiffs' Exhibits 1C, 1D, 1E, 1F, 1J, 1K, and 1Z.[1] The other category of materials consist of excerpts from Price Waterhouse work papers entitled "Distributorship's Financial Summary," being plaintiffs' exhibit 19F (consisting of ten pages 00110–00119 for years 1969–1974). Plaintiffs contend that all of these materials are admissible under Fed. R.Evid. 1006 (as a summary of voluminous writings), 801(d)(2) (as an admission of a party opponent), 803(6) (as business records) or 803(24) (the catch-all exception to the hearsay rule). Plaintiffs' offer is strongly opposed by the defendants who argue that the documents are not admissible under any of the rules of evidence advanced or any other rule. Defendants specifically argue that these materials may not be admitted under Rule 1006, as originals or duplicates of these materials have not been made available for examination or copying; that they are not admissible under Rule 803(24) as they are not trustworthy and the required notice has not been given; and that none of the exceptions to the hearsay rule has been established as to the offered documents.

In this effort to lay a foundation for the admission of these materials into evidence, the plaintiffs called as a witness Ed Harris, a partner in the accounting firm of Price Waterhouse, who testified that his accounting firm was engaged by the Special Review Committee to assist the Committee in the review of certain corporate and financial records of E.T. Barwick Industries and certain work papers of the accounting firm of Ernst & Ernst (now Ernst & Whinney). Mr. Harris testified that all of the above-described documents offered by the plaintiffs were prepared under his direction and supervision. He further testified that they were prepared during the course of his assignment with the Special Review Committee and were based on various papers of the corporation and Ernst & Whinney which he could not specifically describe at this time.

In reaching a decision as to the admissibility of the evidence in question, the court has read and relied upon certain portions of the Special Review Committee's report to

---

1. The materials offered are as follows:

 (a) 1C—Excerpts from Reported Consolidated Financial Information of Barwick Industries. See p. 89–90 of Report of Special Review Committee ("RSRC").

 (b) 1D—Sales Price Inventory, Fiscal Years 1967 and 1968. See p. 100 of the RSRC.

 (c) 1E—Sales Price Inventory, Fiscal Year 1968. See p. 101 of the RSRC.

 (d) 1F—Comparison (in Thousands of Dollars) of Years 1967, 1968, and 1969)—Initial Bulk Sales of Inventory; effect upon reported sales and income before taxes. See p. 103 of the RSRC.

 (e) 1J—Summary of Distributorship Stockholders' (Net Worth) Deficit and Related Allowances for Doubtful Accounts (in Thousands). Attached as Exhibit 5 to RSRC.

 (f) 1K—Comparisons of the Company's Receivable with Distributorship Financial Excerpts. Attached as Exhibit 6 to the RSRC.

 (g) 1Z—Schedule of Activity in Allowance for Doubtful Accounts of Barwick Industries. Attached as Exhibit 7 to the RSRC.

the extent that it further identified or indicated the sources upon which the Price Waterhouse personnel relied in preparing the subject documents.

■■■ Plaintiffs' attempt to have the documents in question admitted under Fed. R.Evid. 801(d)(2)[2] and 1006[3] will not be successful. The testimony of Mr. Harris and relevant portions of the text of the report of the Special Review Committee indicate that the documents or summaries sought to be admitted were based on Barwick Industries records and Ernst & Whinney work papers, but neither has indicated the precise company records or worksheets which were reviewed by Mr. Harris and staff. Without the identification of specific documents, it is not possible to determine that a particular statement or document is an admission with respect to one defendant as opposed to the other, precluding admissibility under Rule 801(d)(2). As to Rule 1006, while all of the documents and records reviewed in the preparation of the exhibits being offered might have been in the possession or were available to either Barwick Industries or Ernst & Whinney, this is not sufficient to satisfy the requirement of the rule. Cases which have construed Rule 1006 mandate that the underlying documents must be shown to have been admissible as well as available. *See* 5 Weinstein & Berger, *Weinstein's Evidence* ¶ 1006[03] at 1006–7 nn. 2 & 3 (1984) (collecting cases).

■■■ There remains the question as to whether the documents tendered by the plaintiffs are admissible under Fed.R.Evid. 803(6)[4] or 803(24).[5] The Price Waterhouse reports or summaries most nearly fit the business records exception. It is clear from the foundational evidence present that Mr. Harris and his staff were under a business duty to Price Waterhouse and to

2. Rule 801(d)(2):

 (d) **Statements which are not hearsay.** A statement is not hearsay if—
 (2) **Admission by party-opponent.** The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

3. Rule 1006:

 The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

4. Rule 803(6):

 **Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

5. Rule 803(24):

 **Other exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

the Special Review Committee to accurately prepare the reports or summaries for the Committee. Mr. Harris testified that his company was retained to review certain corporate records of Barwick Industries and certain work papers of Ernst & Whinney and to render a report to the Committee based on their findings. It is clear that the reports or summaries prepared by Price Waterhouse are hearsay and that the documents upon which they relied were also hearsay, i.e., statements or records of others (Barwick and Ernst & Whinney business records or work papers). These hearsay statements by "outsiders" (persons under no "business duty" to Price Waterhouse to ensure the accuracy of their statements) themselves must fall within a hearsay exception in order to permit the entire Harris review and summary to be admitted as a business record under 803(6). *See United States v. Baker,* 693 F.2d 183, 188 (D.C.Cir.1982). While certain of the underlying documents have been admitted into evidence in the case, the plaintiffs are unable to specifically point to other underlying documents relied on as sources for the Price Waterhouse reports, summaries or work papers. Consequently, the court cannot determine that the plaintiffs have met the requirements of Rule 803(6), as potential hearsay within hearsay problems might still exist.

■ In spite of the above rulings against the admissibility of the evidence in question, several factors are clear to the court which push toward the admissibility, under Rule 803(24), of those portions of the tendered evidence which constituted a part of the Special Review Committee's report. As will be pointed out in more detail below, the evidence sought to be admitted by the plaintiffs possesses equivalent circumstantial guarantees of trustworthiness. Further, the requirements of Rule 803(24)(A), (B) and (C) have been satisfied.

Two factors bear heavily on the court's determination that the information contained in the reports or summaries have sufficient circumstantial guarantees of trustworthiness. In the first place, a comparison of certain items of evidence already admitted in the case with the Price Waterhouse summaries or reports reveal a high degree of similarity. For example, when the basic information in plaintiffs' exhibit 1C is compared to plaintiffs' 3D, E, and F (Audited Consolidated Financial Statements for 1967, 1968 and 1969) much of the information is the same. A similar conclusion is reached when plaintiffs' 1Z is compared to plaintiffs' 2E (Form S1), as far as the information goes. In the second place, the court has considered the nature of the undertaking and the qualifications of the personnel doing the review. Mr. Harris is a certified public accountant and unquestionably well qualified to perform the review of documents undertaken for the Special Review Committee. At the time he (or his staff) examined the underlying documents, he did so on behalf of Price Waterhouse, a national independent accounting firm with no connection to the parties to this action. It appears to the court that Mr. Harris and Price Waterhouse had no particular interest in the matter, except to perform their assigned task with accuracy. Finally, although Mr. Harris cannot now point to the precise Barwick Industries records and Ernst & Whinney work papers he or his staff examined in making his conclusions and reporting them to the Committee, it appears to the court that a person of Mr. Harris's background and experience would be able to assess whether these records and work papers were sufficiently complete and reliable to enable him to form a professional opinion as to their meaning.

■ There remains the matter of the required notice under 803(24), which is a condition precedent to the admission of evidence under this subsection. Defendants strongly argue that the notice requirement has not been satisfied. Based upon a full consideration of the record in this case, the court is compelled to disagree with the defendants and finds that the required notice has been given. The record shows that sufficiently in advance of the trial the plaintiffs' made known to the defendants their intention to offer the report of the

Special Review Committee in its entirety in evidence in the case. The materials contained in the exhibits that the plaintiffs' are now seeking to have admitted into evidence were contained and set forth in the report of the Special Review Committee, with the possible exception of plaintiffs' exhibit 19F (being a portion of the work papers of Price Waterhouse). Prior to the beginning of the trial, the defendants filed a motion in limine seeking to exclude the report of the Special Review Committee from evidence in the case in its entirety. The court granted the motion in limine as to the report as a whole, but deferred ruling upon admissibility of portions of the report until a special request was made. Therefore, the defendants knew sufficiently in advance of trial that plaintiffs intended to use the report and its contents, permitting defendants a fair opportunity to prepare to meet the evidence.

Based upon the foregoing, defendants' objections to the admission of plaintiffs' exhibits 1C, 1D, 1E, 1F, 1J, 1K, and 1Z are OVERRULED, and those documents are admitted.[6]

Upon careful examination of the record and applicable law, it appears to the court that a different conclusion is required for plaintiffs's exhibit 19F (excerpts from the work papers of Price Waterhouse). While the court is able to determine that these documents have the equivalent circumstantial guarantees of trustworthiness and are otherwise acceptable under Rule 803(24), the court is unable to find in the record that the requisite notice was given by the plaintiffs regarding said documents. As far as the court is able to determine, these documents surfaced during the course of the trial and were offered into evidence in connection with the direct examination of Mr. Harris. Consequently, unless the plaintiffs are able to demonstrate other foundational basis, the documents contained in plaintiffs' exhibit 19F will not be admitted into the evidence. *See United States v. Atkins*, 618 F.2d 366, 372 (5th Cir.1980); *United States v. Davis*, 571 F.2d 1354, 1360 n. 11 (5th Cir.1978).

---

**6.** Defendants have also sought exclusion of the tendered evidence under Fed.R.Evid. 403, arguing that the evidence is unfairly prejudicial and likely to confuse or mislead the jury. Plaintiffs' original tender of evidence included narrative portions of the report accompanying the financial summaries now admitted into evidence which included many statements of identified and unidentified declarants. Rule 403 might have precluded admissibility of such narrative portions of the report for many of the same reasons set forth in the court's order of October 18, 1984. However, where the tendered evidence currently before the court consists of excerpted portions of the report having sufficient circumstantial guarantees of trustworthiness, exclusion under Rule 403 is not warranted. Although the court earlier concluded that the report, as a whole, may unduly direct the jury's attention to the information it contains and diminish proper consideration of other evidence in the case by the jury, the court is not persuaded that this risk is present with regard to the excerpted financial summaries.