Daniel Joseph MAHLANDT, a minor, by and through his parents and next friends, Donald J. Mahlandt and Dorcas Eugenie Curry, Donald J. Mahlandt and Dorcas Eugenie Curry, Individually, Appellants,

v.

WILD CANID SURVIVAL & RESEARCH CENTER, INC., a corporation, Jean Poos, and Kenneth Poos, Appellees.

No. 78–1077.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1978.

Decided Dec. 11, 1978.

Rehearing Denied Dec. 26, 1978.

P. Terence Crebs, Gallop, Johnson, Godiner, Morganstern & Crebs, St. Louis, Mo.,

for appellants; Frank Susman, Susman, Schermer, Willer & Rimmel, St. Louis, Mo., on the brief.

Eugene K. Buckley, Evans & Dixon, St. Louis, Mo., for appellees; Marilyn R. Koch, St. Louis, Mo., on the brief.

Before HEANEY and STEPHENSON, Circuit Judges, and VAN SICKLE, District Judge.*

VAN SICKLE, District Judge.

This is a civil action for damages arising out of an alleged attack by a wolf on a child. The sole issues on appeal are as to the correctness of three rulings which excluded conclusionary statements against interest. Two of them were made by a defendant, who was also an employee of the corporate defendant; and the third was in the form of a statement appearing in the records of a board meeting of the corporate defendant.

On March 23, 1973, Daniel Mahlandt, then 3 years, 10 months, and 8 days old, was sent by his mother to a neighbor's home on an adjoining street to get his older brother, Donald. Daniel's mother watched him cross the street, and then turned into the house to get her car keys. Daniel's path took him along a walkway adjacent to the Poos' residence. Next to the walkway was a five foot chain link fence to which Sophie had been chained with a six foot chain. In other words, Sophie was free to move in a half circle having a six foot radius on the side of the fence opposite from Daniel.

Sophie was a bitch wolf, 11 months and 28 days old, who had been born at the St. Louis Zoo, and kept there until she reached 6 months of age, at which time she was given to the Wild Canid Survival and Research Center, Inc. It was the policy of the Zoo to remove wolves from the Children's Zoo after they reached the age of 5 or 6 months. Sophie was supposed to be kept at the Tyson Research Center, but Kenneth Poos, as Director of Education for the Wild

Canid Survival and Research Center, Inc., had been keeping her at his home because he was taking Sophie to schools and institutions where he showed films and gave programs with respect to the nature of wolves. Sophie was known as a very gentle wolf who had proved herself to be good natured and stable during her contacts with thousands of children, while she was in the St. Louis Children's Zoo.

Sophie was chained because the evening before she had jumped the fence and attacked a beagle who was running along the fence and yapping at her.

A neighbor who was ill in bed in the second floor of his home heard a child's screams and went to his window, where he saw a boy lying on his back within the enclosure, with a wolf straddling him. The wolf's face was near Daniel's face, but the distance was so great that he could not see what the wolf was doing, and did not see any biting. Within about 15 seconds the neighbor saw Clarke Poos, about seventeen, run around the house, get the wolf off of the boy, and disappear with the child in his arms to the back of the house. Clarke took the boy in and laid him on the kitchen floor.

Clarke had been returning from his friend's home immediately west when he heard a child's cries and ran around to the enclosure. He found Daniel lying within the enclosure, about three feet from the fence, and Sophie standing back from the boy the length of her chain, and wailing. An expert in the behavior of wolves stated that when a wolf licks a child's face that it is a sign of care, and not a sign of attack; that a wolf's wail is a sign of compassion, and an effort to get attention, not a sign of attack. No witness saw or knew how Daniel was injured. Clarke and his sister ran over to get Daniel's mother. She says that Clarke told her, "a wolf got Danny and he is dying." Clarke denies that statement. The defendant, Mr. Poos, arrived home while Daniel and his mother were in the kitchen. After Daniel was taken in an am-

* Bruce M. Van Sickle, United States District Judge, District of North Dakota, sitting by designation.

bulance, Mr. Poos talked to everyone present, including a neighbor who came in. Within an hour after he arrived home, Mr. Poos went to Washington University to inform Owen Sexton, President of Wild Canid Survival and Research Center, Inc., of the incident. Mr. Sexton was not in his office so Mr. Poos left the following note on his door:

> Owen, would call me at home, 727–5080? Sophie bit a child that came in our back yard. All has been taken care of. I need to convey what happened to you. (Exhibit 11)

Denial of admission of this note is one of the issues on appeal.

Later that day, Mr. Poos found Mr. Sexton at the Tyson Research Center and told him what had happened. Denial of plaintiff's offer to prove that Mr. Poos told Mr. Sexton that, "Sophie had bit a child that day," is the second issue on appeal.

A meeting of the Directors of the Wild Canid Survival and Research Center, Inc., was held on April 4, 1973. Mr. Poos was not present at that meeting. The minutes of that meeting reflect that there was a "great deal of discussion . . . about the legal aspects of the incident of Sophie biting the child." Plaintiff offered an abstract of the minutes containing that reference. Denial of the offer of that abstract is the third issue on appeal.

Daniel had lacerations of the face, left thigh, left calf, and right thigh, and abrasions and bruises of the abdomen and chest. Mr. Mahlandt was permitted to state that Daniel had indicated that he had gone under the fence. Mr. Mahlandt and Mr. Poos, about a month after the incident, examined the fence to determine what caused Daniel's lacerations. Mr. Mahlandt felt that they did not look like animal bites. The parallel scars on Daniel's thigh appeared to match the configuration of the barbs or tines on the fence. The expert as to the behavior of wolves opined that the lacerations were not wolf bites or wounds caused by wolf claws. Wolves have powerful jaws and a wolf bite will result in massive crushing or severing of a limb. He stated that if Sophie had bitten Daniel there would have been clear apposition of teeth and massive crushing of Daniel's hands and arms which were not injured. Also, if Sophie had pulled Daniel under the fence, tooth marks on the foot or leg would have been present, although Sophie possessed enough strength to pull the boy under the fence.

The jury brought in a verdict for the defense.

The trial judge's rationale for excluding the note, the statement, and the corporate minutes, was the same in each case. He reasoned that Mr. Poos did not have any personal knowledge of the facts, and accordingly, the first two admissions were based on hearsay; and the third admission contained in the minutes of the board meeting was subject to the same objection of hearsay, and unreliability because of lack of personal knowledge.

The Federal Rules of Evidence became effective in July 1975 (180 days after passage of the Act). Thus, at this time, there is very little case law to rely upon for resolution of the problems of interpretation.

■ The relevant rule here is:

Rule 801. Definitions.

. . . (d) Statements which are not hearsay. A statement is not hearsay if—

. . . (2) Admission by party-opponent. The statement is offered against a party and is

. . . (A) his own statement, in either his individual or representative capacity or

(B) a statement of which he has manifested his adoption or belief in its truth, or

(C) a statement by a person authorized by him to make a statement concerning the subject, or

(D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, . . . .

So the statement in the note pinned on the door is not hearsay, and is admissible against Mr. Poos. It was his own statement, and as such was clearly different from the reported statement of another. Example, "I was told that . . . ." *See Cedeck v. Hamiltonian Fed. Sav. & L. Ass'n.*, 551 F.2d 1136 (8th Cir. 1977). It was also a statement of which he had manifested his adoption or belief in its truth. And the same observations may be made of the statement made later in the day to Mr. Sexton that, "Sophie had bit a child . . ."

■ Are these statements admissible against Wild Canid Survival and Research Center, Inc.? They were made by Mr. Poos when he was an agent or servant of the Wild Canid Survival and Research Center, Inc., and they concerned a matter within the scope of his agency, or employment, i. e., his custody of Sophie, and were made during the existence of that relationship.

Defendant argues that Rule 801(d)(2) does not provide for the admission of "in house" statements; that is, it allows only admissions made to third parties.

The notes of the Advisory Committee on the Proposed Rules (28 U.S.C.A., Volume on Federal Rules of Evidence, Rule 801, p. 527 at p. 530), discuss the problem of "in house" admissions with reference to Rule 801(d)(2)(C) situations. This is not a (C) situation because Mr. Poos was not authorized or directed to make a statement on the matter by anyone. But the rationale developed in that comment does apply to this (D) situation. Mr. Poos had actual physical custody of Sophie. His conclusions, his opinions, were obviously accepted as a basis for action by his principal. See minutes of corporate meeting. As the Advisory Committee points out in its note on (C) situations.

. . . communication to an outsider has not generally been thought to be an essential characteristic of an admission. Thus a party's books or records are usable against him, without regard to any intent to disclose to third persons. V Wigmore on Evidence § 1557.

Weinstein's discussion of Rule 801(d)(2)(D) (Weinstein's Evidence § 801(d)(2)(D)(01), p. 801–137), states that:

Rule 801(d)(2)(D) adopts the approach . . . which, as a general proposition, makes statement made by agents within the scope of their employment admissible . . . . Once agency, and the making of the statement while the relationship continues, are established, the statement is exempt from the hearsay rule so long as it relates to a matter within the scope of the agency.

After reciting a lengthy quotation which justifies the rule as necessary, and suggests that such admissions are trustworthy and reliable, Weinstein states categorically that although an express requirement of personal knowledge on the part of the declarant of the facts underlying his statement is not written into the rule, it should be. He feels that is mandated by Rules 805 and 403.

■ Rule 805 recites, in effect, that a statement containing hearsay within hearsay is admissible if each part of the statement falls within an exception to the hearsay rule. Rule 805, however, deals only with hearsay exceptions. A statement based on the personal knowledge of the declarant of facts underlying his statement is not the repetition of the statement of another, thus not hearsay. It is merely opinion testimony. Rule 805 cannot mandate the implied condition desired by Judge Weinstein.

Rule 403 provides for the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. Nor does Rule 403 mandate the implied condition desired by Judge Weinstein.

■ Thus, while both Rule 805 and Rule 403 provide additional bases for excluding otherwise acceptable evidence, neither rule mandates the introduction into Rule 801(d)(2)(D) of an implied requirement that the declarant have personal knowledge of

the facts underlying his statement. So we conclude that the two statements made by Mr. Poos were admissible against Wild Canid Survival and Research Center, Inc.

 As to the entry in the records of a corporate meeting, the directors as primary officers of the corporation had the authority to include their conclusions in the record of the meeting. So the evidence would fall within 801(d)(2)(C) as to Wild Canid Survival and Research Center, Inc., and be admissible. The "in house" aspect of this admission has already been discussed, Rule 801(d)(2)(D), *supra.*

But there was no servant, or agency, relationship which justified admitting the evidence of the board minutes as against Mr. Poos.

None of the conditions of 801(d)(2) cover the claim that minutes of a corporate board meeting can be used against a non-attending, non-participating employee of that corporation. The evidence was not admissible as against Mr. Poos.

 There is left only the question of whether the trial court's rulings which excluded all three items of evidence are justified under Rule 403. He clearly found that the evidence was not reliable, pointing out that none of the statements were based on the personal knowledge of the declarant.

Again, that problem was faced by the Advisory Committee on Proposed Rules. In its discussion of 801(d)(2) exceptions to the hearsay rule, the Committee said:

> The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstances, and from the restrictive influences of the opinion rule and the rule requiring first hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility. 28 U.S. C.A., Volume of Federal Rules of Evidence, Rule 801, p. 527, at p. 530.

So here, remembering that relevant evidence is usually prejudicial to the cause of the side against which it is presented, and that the prejudice which concerns us is un-reasonable prejudice; and applying the spirit of Rule 801(d)(2), we hold that Rule 403 does not warrant the exclusion of the evidence of Mr. Poos' statements as against himself or Wild Canid Survival and Research Center, Inc.

But the limited admissibility of the corporate minutes, coupled with the repetitive nature of the evidence and the low probative value of the minute record, all justify supporting the judgment of the trial court under Rule 403.

The judgment of the District Court is reversed and the matter remanded to the District Court for a new trial consistent with this opinion.