UNITED STATES of America, Appellee,

v.

King Ricardo MURPHY, a/k/a "Ricky," Appellant.

UNITED STATES of America, Appellee,

v.

Reginald Arnold WADDELL, Appellant.

UNITED STATES of America, Appellee,

v.

Reginald Arnold WADDELL, Appellant.

UNITED STATES of America, Appellee,

v.

King R. MURPHY, Appellant.

Nos. 81–5279 to 81–5282.

United States Court of Appeals,
Fourth Circuit.

Argued June 11, 1982.

Decided Nov. 24, 1982.

Rehearing Denied Dec. 29, 1982.

Jeffrey T. Twardy, Alexandria, Va., for appellant Murphy.

E. Blair Brown, Alexandria, Va., for appellant Waddell.

Leonie M. Brinkema, Asst. U.S. Atty., Alexandria, Va., (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before BUTZNER and HALL, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

The defendants, Murphy and Waddell, were indicted for the robbery of three banks in northern Virginia. In successive trials, they were convicted of two of those offenses after which the United States did not press the charges arising out of the robbery of the third bank. The indictments had been secured in substantial part on the basis of grand jury testimony of an alleged confederate who had entered a plea of guilty to one of the indictments and had been granted immunity by federal and state officials with respect to other pending and potential charges.

In two separate trials before two different petit juries, the relevant grand jury testimony was received in evidence. The circumstances differed, for in the first trial the grand jury witness took the stand and denied the truthfulness of his grand jury testimony, while in the second trial he refused to testify at all. Since the problems are related, however, we address them in one opinion.

### I.

Joseph Gregory Lattisaw tendered a plea of guilty to one of the three indictments and a commitment to testify fully about all three of the bank robberies before grand and petit juries. The government also agreed that his testimony would not be used against him, unless he testified untruthfully and was charged with perjury.

### A.

*Bank of Virginia, Dumfries, Virginia*

When called as a witness in the trial of the defendants for the armed robbery of the bank in Dumfries, Lattisaw answered routine questions about his recent criminal record, his plea of guilty to armed robbery of the bank in Springfield and the terms of the plea agreement, including the fact that if he failed to testify truthfully he could be prosecuted for the robbery of two other banks and for perjury. When asked wheth-

er he had robbed the Bank of Virginia in Dumfries, however, his response was, "I think I did," and he proceeded to testify that he could not remember his accomplices. To other questions about the event and the setting, Lattisaw claimed to remember nothing, except that neither of the two defendants on trial were with him when the bank was robbed. He remembered that he had given a written statement to an FBI agent and had appeared before the grand jury, but did not remember what he had said except that he had "told a whole lot of lies." He said that he did not know either of the two defendants.

The transcript of his grand jury testimony was then received in evidence.

Defense counsel cross-examined Lattisaw. He admitted to an expensive heroin habit, which he financed through thefts. When asked if an FBI agent had suggested to him the name Murphy or Waddell, he testified that the agents had suggested both names to him and that was the only reason he remembered them.

There were other witnesses. Their general description of the robbery was consistent with Lattisaw's grand jury testimony. One of them identified Waddell as the man with the two handguns while two others said that Waddell "looked like" that man. Murphy was not so identified, but, according to Lattisaw's grand jury testimony, he was waiting in the get-away car.

■ The grand jury testimony was properly admitted under Rule 801(d)(1) of the Federal Rules of Evidence.[1] The declarant, Lattisaw, testified at the trial and was actually cross-examined. The grand jury testimony was given under oath and was inconsistent with his trial testimony. Finally, a grand jury proceeding is an "other proceeding" within the meaning of the rule. See United States v. Mosley, 555 F.2d 191, 193 (8th Cir.), cert. denied, 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977).

Interestingly, the Advisory Committee Notes to § 801(d)(1), echoing the California Law Revision Commission's observations about a similar provision, state that it "will provide a party with desirable protection against the 'turncoat' witness who changes his story on the stand and deprives the party calling him of evidence essential to his case."

Lattisaw's vagueness about what he said during his appearance before the grand jury did not deny the defendants an opportunity for effective cross-examination. Lattisaw remembered the things crucial to the defense: he was a heroin addict, and the defendants were not his accomplices—indeed, he did not know them and had used their names only because of the suggestion of the FBI agents.

■ Nor was there any violation of the Sixth Amendment's Confrontation Clause as California v. Green, 399 U.S. 149, 159–61, 90 S.Ct. 1930, 1935–36, 26 L.Ed.2d 489 (1970), plainly teaches. Under Green, any prior inconsistent statement, sworn or unsworn, may come in as evidence of its content so long as the declarant is on the witness stand at the trial and subject at that time to cross-examination.

## B.

### United Virginia Bank, Springfield, Virginia

In his appearance before the grand jury with respect to the armed robbery of the United Virginia Bank in Springfield, Virginia, Lattisaw testified that he, Joyce Gantt and Waddell drove to Springfield in Waddell's Cadillac. Murphy drove down in his Oldsmobile, for they planned to switch cars. Murphy's Oldsmobile was parked a few blocks away from the bank, and Joyce Gantt was in the driver's seat of the Cadillac when the three men entered the bank. Lattisaw and Waddell wore masks pulled

---

1. (d) Statements which are not hearsay. A statement is not hearsay if—

   (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) * * * *

down completely to conceal their heads, faces and necks except for two round cut-outs for their eyes, though during the robbery Waddell pulled his mask up somewhat. Waddell and Murphy were armed with handguns. Murphy stood guard near the door as Lattisaw and Waddell emptied the tellers' drawers. The three men ran from the bank to Waddell's Cadillac, in which Joyce Gantt drove them rapidly away. A few blocks away, the men told her to stop and they alighted to retrieve Waddell's Oldsmobile. Pursuant to instructions, Gantt, alone in the Cadillac, drove toward Washington.

Lattisaw testified that he had identified himself and Waddell in surveillance photographs. Murphy, standing guard near the door, was not included in the camera's field.

He described the plea agreement, and stated that he was not under the influence of drugs or alcohol and had used neither "in the last few days."

At the trial, the government called as its first witness Kenneth Gurne, a customer in the bank. He described the event much as Lattisaw had, including the fact that the robber who vaulted the counter (Waddell) had his mask partially rolled up when he left, which permitted Gurne to see that Waddell was a black man. He testified that Murphy looked "very much like" the one unmasked robber at the guard post.

Gurne followed the robbers out of the bank, saw them leaving in the Cadillac and was able to furnish a description of it.

The government's second witness was Joyce Gantt, who had been granted full immunity. Her testimony was entirely consistent with Lattisaw's grand jury testimony. As she drove toward Washington, however, she was stopped by a policeman and arrested for the robbery of the bank. In his grand jury testimony, Lattisaw had testified that the three men in the Oldsmobile saw that the Cadillac had been stopped by a policeman, though the men, of course, did not stop. On cross-examination, Gantt admitted using an alias. She was a heroin addict, supporting a $100 a day habit by shoplifting.

The government next called Lattisaw. From its experience with Lattisaw during the trial the week before, it anticipated trouble. Several days before the trial, the government had supplied defense counsel with a transcript of Lattisaw's grand jury testimony. Before calling Lattisaw, counsel discussed the possible problems with the trial judge.

When called, Lattisaw refused to be sworn. The judge declared Lattisaw an unavailable witness within the meaning of Federal Rule of Evidence 804(a)(2), and ruled that a transcript of his grand jury testimony could be received in evidence under Rule 804(b)(5). When the jury returned to the courtroom, the judge informed the jurors what had happened, but cautioned them that Lattisaw had not been cross-examined with respect to his grand jury testimony.

After one of the tellers had testified, the government called to the witness stand Vincent Calabrese, who had observed the robbery through the front window. He saw the three men run out of the bank and undertook to give chase. Threatened with a gun, he ducked behind a car, but then resumed the chase. He described Waddell's black and gold mask, and his description of the Cadillac into which the men jumped was consistent with that of Lattisaw, Gantt and Gurne.

Calabrese was taken by police officers to the Cadillac in which Gantt had been stopped. He identified it as the automobile in which the robbers escaped. In the rear passenger compartment, there was a black and gold knitted mask with cutouts for eye holes, which he said was the one he had seen. He again identified the mask at the trial, and it was received in evidence.

There was proof that the Cadillac was registered in Waddell's name, and that the mask had been found in that car.

The court instructed the jury that it might consider Lattisaw's grand jury testimony, but again cautioned it to remember that Lattisaw had not been subject to cross-examination.

The jury found both defendants guilty.

There is a strong indication that Lattisaw was being programmed by the defendants or by others in defendants' behalf. At the first trial, for the Dumfries robbery, he professed to remember nothing that would implicate the defendants, but he did remember that his grand jury testimony was false and that the defendants had nothing to do with the crime. That tactic was unsuccessful in achieving acquittal of the defendants, for Lattisaw's grand jury testimony came into evidence and went before the jury.

At the trial for the Springfield robbery, the tactic was changed and Lattisaw declined to testify at all, thus rendering Rule 801(d)(1) inapplicable. By his conduct in each trial, he subjected himself to possible, even probable, prosecution for two bank robberies, for which the plea agreement would have granted him immunity. By his conduct in the first trial, he also exposed himself to prosecution for perjury. One willing thus to expose himself to long terms of imprisonment will hardly be influenced by a threat of imprisonment for contempt. In any event, the gravity of the coercion to which he had been subjected or his rugged dedication to truthfulness at all costs is remarkable.

There was no direct or positive evidence, however, that any coercive pressure was brought to bear against Lattisaw by either of the two defendants. There is no basis for a finding that either waived his right to object to admission of the testimony on the basis of Federal Rules of Evidence or on the basis of the Sixth Amendment's Confrontation Clause. We must proceed to the merits.

■ We have recently canvassed this field in *United States v. West,* 574 F.2d 1131 (4th Cir.1978), and *United States v. Garner,* 574 F.2d 1141 (4th Cir.) *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978). Our holdings in those cases have been criticized, *see United States v. Balano,* 618 F.2d 624 (10th Cir.1979), but we adhere to our view that grand jury testimony under the circumstances of those cases is ad-missible under Federal Rule of Evidence 804(b)(5) and that its receipt is not a violation of the Sixth Amendment's Confrontation Clause. As we said there, we realize that the question that arises under the Rules of Evidence is not necessarily the same as that presented under the Confrontation Clause, but the Supreme Court has held that resolution of the Confrontation Clause problem depends upon the adequacy of the indicia of reliability and trustworthiness of the out-of-court declaration of the unavailable witness. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). When the problem arises under Rule 804(b)(5), under which the extra-judicial statement may not come in unless there are circumstantial guarantees of trustworthiness, the inquiries under the two branches of the problem become closely related. Something more may be required under the Confrontation Clause, but we are satisfied that there are present in this case sufficient badges of trustworthiness to meet the tests of Rule 804(b)(5) and of the Sixth Amendment.

There are abundant indicia of the reliability and trustworthiness of Lattisaw's grand jury testimony. Gantt's credibility may have been subject to question, but her testimony was entirely consistent with Lattisaw's grand jury testimony. So was the testimony of the other witnesses at the scene, including such details as the fact that when Waddell left the bank his mask was partially rolled up so that some of his hair and skin could be seen. There was confirmation in the identification of the Cadillac, the first getaway car, in which Gantt was arrested before reaching Washington and in which the black and gold ski mask was found. That automobile was registered in Waddell's name, just as Lattisaw testified. Conviction did not rest alone upon the grand jury testimony of Lattisaw but upon that together with other strongly corroborative testimony and proof, some of which was unimpeachable. The circumstances fully justified receipt in evidence of the grand jury testimony and our conclusion

that its receipt violated neither the Rules of Evidence nor the Confrontation Clause.

## II.

In the first trial, for the robbery of the bank in Dumfries, Murphy sought a mistrial upon the ground that Lattisaw's grand jury testimony disclosed Murphy's previous criminal record. When asked how long he had known Murphy, Lattisaw's response indicated a gap in their acquaintance during the time that Murphy had spent "in the institution."

The omission to excise that statement from the transcript of the grand jury testimony is troubling, but we think no reversible error was committed. The reference to "the institution" was ambiguous. It was not identified as a prison. There was no mention of any reason why Murphy spent time in the unidentified institution. No reasonable juror who noticed this parenthetic remark could have been certain of its meaning or implication. Under the circumstances, we conclude that this casual reference was not so prejudicial to Murphy as to require the granting of a new trial.

## III.

We have considered Murphy's other contention and find it to be without merit.

AFFIRMED.