Leroy E. BROOKOVER, Father and Guardian of Ronald Brookover, Plaintiff, Appellee,

v.

MARY HITCHCOCK MEMORIAL HOSPITAL, Defendant, Appellant.

No. 89–1340.

United States Court of Appeals, First Circuit.

Heard Oct. 4, 1989.
Decided Jan. 9, 1990.

---

Peter W. Mosseau, with whom Jill K. Blackmer and Orr and Reno, P.A., Concord, N.H., were on brief, for defendant, appellant.

Bruce W. Felmly, with whom Joseph D. Leverone and McLane, Graf, Raulerson & Middleton, P.A., Manchester, N.H., were on brief, for plaintiff, appellee.

Before BOWNES, BREYER and BROWN * Circuit Judges.

BOWNES, Circuit Judge.

Defendant-appellant Mary Hitchcock Memorial Hospital (Hospital) appeals from a jury verdict holding it liable in this diversity jurisdiction medical malpractice case. The case arose from a fall by a patient, Ronald Brookover (Ronald), in his room at the Hospital. Plaintiff-appellee Leroy E. Brookover is the parent and guardian of Ronald Brookover. There are two issues on appeal: the admission of statements under Fed.R.Evid. 801(d)(2)(D); and the admission of statements under Fed.R.Evid. 804(b)(5).

## I. The Facts

The basic facts are uncontested. Ronald was age 36 at the time of the accident. When he was nine years old he was in an automobile accident and incurred injuries resulting in periodic epileptic seizures. As Ronald grew older his seizures became more severe and more difficult to control. These seizures included grand mal seizures that caused Ronald to convulse violently and lose consciousness and akinetic seizures that caused him to drop uncontrollably to the floor. Both types of seizures caused Ronald to fall on numerous occasions and resulted in injuries that included

* Senior Judge of the Fifth Circuit, sitting by designation.

two fractured ankles, broken teeth and various bruises. Ronald is also mentally retarded.

After trying various methods to improve Ronald's condition, the Brookovers finally decided to try a corpus callosotomy, a surgical procedure in which the left and right hemispheres of the brain are separated. If successful, the operation reduces epileptic seizures significantly. The procedure requires two phases: the first is a partial dissection, the second phase completes the separation of the brain hemispheres.

Ronald was admitted to the Hospital in April of 1983 for the first phase of the corpus callosotomy. Ronald responded well to the first phase of the operation and returned to the Hospital in November of 1983 for the second phase. The operation was performed on November 10, 1983. On November 13, Ronald, who was not physically restrained, got out of his bed to go to the bathroom and fell, breaking his hip. Prior to getting out of bed Ronald had pressed his call bell for assistance, but no one came immediately.

A medical malpractice suit was brought by plaintiff for the injuries suffered by Ronald as a result of the fall. At trial there were two basic issues: whether the Hospital was negligent in not restraining Ronald to prevent him from getting out of bed; and, whether the Hospital's response time to Ronald's call for assistance was unreasonably slow.

## II. Nurses' Statements to Plaintiff

In order to prove that the hospital should have used a bed restraint, Mr. Brookover sought to testify about conversations that he had at the hospital after the fall with nurses. The nurses told him that Ronald should have been restrained to prevent him from getting out of bed. Plaintiff sought

to have the statements admitted as vicarious admissions under Fed.R.Evid. 801(d)(2)(D) which provides:

A statement is not hearsay if.... Th[e] statement is offered against a party and is.... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

After considerable discussion, the district court allowed the plaintiff to testify about the conversations.[1] Defendant assigns error to the admission of these statements on two grounds: that there was no proof that the nurses who spoke to plaintiff were employees of the Hospital; and, that the nurses lacked personal knowledge of the events about which they commented.[2]

A. *Waiver of the Agency–Employee Objection.*

■ In order for a vicarious admission to be allowed in evidence under the under Rule 801(d)(2)(D) the person making the admission must be an agent or employee of the party against whom it is being offered. There was no proof here that the nurses with whom plaintiff spoke were employees of the Hospital. If an objection on that ground had been made in the trial court, it should have been upheld. Defendant's protestations notwithstanding, we have been unable to find any objection in the record based on a failure to prove that the nurses were employees of the Hospital.

We set forth the objections made in detail. The first objection was stated as follows:

Your honor, in order to meet that predicate, that necessity under 801(d)(2)(D), it has to be relating to a matter within the scope of that particular agency. Now this, in this particular case I think that the testimony will demonstrate that this

1. The court allowed plaintiff to answer the following two questions:
Q. After Ron's fall and after you had learned he had fallen in the hospital and had not been restrained did you have conversation with any of the hospital nurses that related to whether or not they had opinions or feelings as to whether Ron should have been restrained?
A. Yes, sir.

Q. And could you tell the jury the substance of those conversations, what those nurses of the hospital said to you.

2. At trial defendant also objected to the questions asked plaintiff on the grounds that they were leading. This objection has not been raised on appeal.

nurse didn't have any personal knowledge of the events that took place during the previous evening and for that reason it doesn't fall within the scope of 801(d)(2)(D).

No mention was made of the nurse's status relative to the Hospital.

Defendant's second objection was in greater detail:

Your Honor, our position is the same position that we articulated to the Court before, which is in order for this, these statements to come in they must have been made by nurses who had some personal knowledge regarding the circumstances regarding the fall. Mrs. Brookover's testimony and I'm sure that Mr. Brookover's testimony will be the same in the sense that these were statements made by nurses, if they were made at all, by nurses who were not employed during the evening shift and had no personal knowledge regarding the circumstances surrounding Ron Brookover's fall.

Under those circumstances in light of the fact that these nurses don't have any personal knowledge and that they're unidentifiable, that doesn't make it admissible. The rule of the case established thus far by your Honor's evidentiary rulings is that this type of evidence is inadmissible because they don't have personal knowledge.

We think the district court judge would take this statement as an objection based on lack of personal knowledge by the nurses.

Defendant restated its position:

And our position is in light of the fact that they weren't employed during the evening that criticism, because they can't be identified, does not fall within the ambit of the rule that Brother Felmly cites. It's clearly hearsay. It's being offered for the truth of the matter asserted and it does not fall within the ambit of an admission by a party opponent.

This objection was broader and more ambiguous than the first two and it conceivably could be argued that it covered both status and personal knowledge. Whatever foundation this objection might have had on the question of agency-employee, however, was completely eroded by defendant's final statement of his objection to the testimony of the plaintiff as to what the nurses had stated:

Your Honor, I'll stand on my comments with regards to this particular issue as it was raised with regards to Dorris Brookover, because we believe that the factual circumstances regarding Mr. Brookover's testimony would be the same in that these nurses didn't have any personal knowledge of what took place.

The record shows beyond peradventure that defendant fought the introduction of the testimony of the nurses' statements solely on the grounds that the nurses lacked personal knowledge of the circumstances of Ronald's fall. Indeed, based on the wording of the objections the district court would have been warranted in concluding that defendant had conceded that the nurses were its employees.

This circuit consistently has followed the strictures of Fed.R.Evid. 103(a)(1) [3] by requiring a timely and specific objection to a ruling admitting evidence. *See Allied Int'l, Inc. v. International Longshore Ass'n,* 814 F.2d 32, 39–40 (1st Cir.), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1989) ("[i]t is axiomatic that the failure to object at trial ... forecloses any opportunity to challenge the admissibility of the evidence on appeal."); *United States v. Abou–Saada,* 785 F.2d 1, 8–9 (1st Cir.), *cert. denied,* 477 U.S. 908, 106 S.Ct. 3283, 91 L.Ed.2d 572 (1986) (objection that neither identifies the testimony nor indicates the specific grounds of the objection is inadequate); *Jay Edwards, Inc. v. New*

---

3. Fed.R.Evid. 103(a)(1) provides:

(a) **Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) **Objection.** In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context;
. . . .

*England Toyota Distributor,* 708 F.2d 814, 823 (1st Cir.), *cert. denied,* 464 U.S. 894 (1983) (failure to object below on basis of prejudice pretermits appellate review on that ground); *Bryant v. Consolidated Rail Corp.,* 672 F.2d 217, 220 (1st Cir.1982) (failure to raise specific rule of evidence below as required by Fed.R.Evid. 103(a)(1) makes it unnecessary to resolve issue).

Defendant urges that appellate review is available under *United States v. Currier,* 836 F.2d 11 (1st Cir.1987) despite the fact that a specific objection was not raised below. In *Currier,* the defendant objected to the playing of a tape recording at trial on the basis of prejudice, citing Fed.R.Evid. 403. On appeal, defendant argued that the admission also violated Fed.R.Evid. 404(b) because the tape was admitted to prove "bad character." The government argued that defendant's failure to object on Rule 404(b) grounds at trial foreclosed his raising the issue on appeal. We disagreed, holding:

> Fed.R.Evid. 403 and 404(b) usually, as here, go hand in glove. Fed.R.Evid. 404(b) describes a particular form of evidence that might create the "unfair prejudice" anticipated under Fed.R.Evid. 403. *See United States v. Currier,* 821 F.2d 52, 55–56 (1st Cir.1987); *cf. United States v. Saintil,* 753 F.2d 984, 989 n. 7 (11 Cir.), *cert. denied,* 472 U.S. 1012, 105 S.Ct. 2712, 86 L.Ed.2d 727 (1985). We will, therefore, review the district court's admission of the tape into evidence in accordance with Fed.R.Evid. 404(b), even though appellant failed to invoke this rule when objecting under Fed.R.Evid. 403. Review of the admissibility of the evidence under both rules is particularly justified here, because the district court responded to appellant's 403 objection by quoting Fed.R.Evid. 404(b) in its cautionary instruction to the jury.

*Id.* at 17.

*Currier* is the exception that proves the rule but is inapposite here. As is evident from the record, *supra,* the Hospital's objection to the nurses' statements focused on their lack of personal knowledge. Unlike rules 403 and 404(b) there is no connecting link between an admission by an employee and the employee's personal knowledge of the event. In fact, as we discuss, *infra,* personal knowledge of an agent or employee is not a requirement for admission under the wording of Rule 801(d)(2)(D). Agency-employment and personal knowledge involve two entirely separate factors. And unlike the judge in *Currier* who, in effect, equated defendant's rule 403 objection with that of rule 404(b) in his instructions to the jury, the judge here, as already pointed out, could well have believed, on the basis of the objections made, that the Hospital conceded the agency-employment requirement of the Rule. Moreover, if an objection had been made explicitly on lack of evidence of employment, plaintiff might well have filled the lacuna by calling the personnel director of the Hospital or introducing personnel records. We, therefore, hold that defendant waived its objection to the agency-employee requirement of the rule. For purposes of our review the nurses are viewed as employees of the Hospital.

### B. *Personal Knowledge and Rule 801(d)(2)(D).*

The issue is whether it was proper to admit the plaintiff's testimony about what he was told by the nurses without showing that they had personal knowledge of the circumstances of Ronald's fall.

We start our inquiry with the words of the Rule. As already noted there is nothing in the Rule requiring that the admission be based on personal knowledge by the relator of the event triggering the statement. The notes of the Advisory Committee on Proposed Rules show that the omission of a personal knowledge requirement was intentional:

> No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the re-

sults, calls for generous treatment of this avenue to admissibility.

Commentators and the courts differ on whether personal knowledge is a prerequisite for a vicarious admission under the Rule. In 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(2)(D)[01] at 226–227 (1988 and Supp.1989), it is stated:

Rule 801(d)(2)(D) departs from the Uniform Rule in not containing an express requirement of personal knowledge on the part of the declarant of the facts underlying his statement. As was pointed out in connection with subdivision (c) in ¶ 801(d)(2)(C)[01], *supra*, such a requirement should be read into this rule as mandated by Rules 805 and 403. Gossip does not become reliable merely because it is heard in an office rather than a home. (footnotes omitted).

Although not explicitly taking a directly contrary position, *McCormick on Evidence* has this comment on the approach espoused by *Weinstein:* "The validity of dispensing with firsthand knowledge in the case of admissions by agents has been questioned vigorously by a leading text on the Federal Rules of Evidence, advocating the insertion of such a requirement by construction. The proposal has not met with judicial acceptance." (footnotes omitted). E. Cleary, *McCormick on Evidence* § 264 at 779 (3d ed. 1984 and 1987 Supp.).

In *Mahlandt v. Wild Canid Survival, etc.*, 588 F.2d 626, 630–631 (8th Cir.1978) the court expressly rejected the Weinstein position and held that there was no requirement under the Rule, "that the declarant have personal knowledge of the facts underlying the statement." *See also United States v. Ammar*, 714 F.2d 238, 254 (3rd Cir.) *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983), (finds it clear from the Advisory Committee Notes that personal knowledge not a requirement for admissions under the Rule); *MCI Communications v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1143 (7th Cir.), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). (report of agents of corporation admissible, citing to *Mahlandt* and *McCormick on Evidence* ).

Not surprisingly, the Second Circuit has followed *Weinstein* and quoted his admonition about office gossip in excluding notes recounting what various employees had stated about wrongdoing on the part of other employees. *Litton Systems, Inc. v. American Tel. & Tel. Co.*, 700 F.2d 785, 816–817 (2d Cir.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984). In *Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir.1986), the court cited to *Litton Systems* in excluding statements by employees because a proper foundation had not been laid showing that the statements were within the scope of employment. But *Litton Systems* was qualified by of a footnote in a later case that bears quoting:

Although it is not necessary to decide the point, we would not wish to be understood as foreclosing the Government's argument that the Matthews notes were outside the hearsay rule, and thus admissible against Southland, under FRE 801(d)(2)(D) as "a statement by [an] agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." The appellants contend that *Litton System, Inc. v. American Tel. & Tel. Co.*, 700 F.2d 785, 816–17 (2 Cir.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984), requires that the author of the admission have personal knowledge, apparently meaning knowledge from non-hearsay sources. We do not read the *Litton* opinion as going so far. The material excluded in *Litton* was merely notes of employee interviews; the opinion describes them as containing "multiple levels of hearsay" and refers to the recorded material as "gossip," citing 4 Weinstein, Evidence ¶ 801(d)(2), at 801–164 (1981). Here Matthews had obtained knowledge of the questionable nature of the Mastropieri fee in his capacity as general counsel before his assignment to the BER. Moreover, the *Litton* opinion does not cite the statement in the Advisory Committee's Notes.

*United States v. Southland Corp.*, 760 F.2d 1366, 1376, n. 4, *cert. denied*, 474 U.S.

825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985) (Friendly J.).

In *Union Mutual Life Insurance Co. v. Chrysler Corp.*, 793 F.2d 1 (1st Cir.1986) we discussed the admission of a letter by an employee which was objected to as hearsay and because it did not rest on personal knowledge. After pointing out that the letter was not hearsay but an admission under Rule 801(d)(2)(D), we addressed the personal knowledge objection:

CSA also argues for inadmissibility on the ground that Janowski's opinion did not rest on his "personal knowledge." We note that the Advisory Committee for the Federal Rules of Evidence refused to make "personal knowledge" a prerequisite to the admissibility of "admissions." *See* Fed.R.Evid. 801(d)(2) & advisory committee note ("No guarantee of trustworthiness is required in the case of an admission.... [A]dmissions have enjoyed [freedom] from ... the restrictive influences of the opinion rule and the rule requiring first-hand knowledge.") Nonetheless, some courts have read a personal knowledge requirement into the vicarious admission branch of Rule 801(d)(2). *Litton Systems, Inc. v. AT & T,* 700 F.2d 785, 816–17 (2d Cir. 1983). *But see MCI Communications, Inc. v. AT & T,* 708 F.2d at 1143; *Mahlandt v. Wild Canid Survival and Research Center, Inc.,* 588 F.2d 626, 630–31 (8th Cir.1978); *In re A.H. Robins Co.,* 575 F.Supp. 718, 723–25 (D.Kan.1983).

The authorities imposing such a requirement, however, seem concerned lest the admission serve as a vehicle for admitting other *hearsay,* where for example, the out-of-court declarant's statement simply reflects the statements of other people, which statements may themselves amount to inadmissible hearsay. *See United States v. Southland Corp.,* 760 F.2d 1366, 1376–77 n. 4 (2d Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(2)(D)[01], 801–226 to –227 ("Gossip does not become reliable merely because it is heard in an office rather than a home."). Here, however, the source of

Janowski's knowledge apparently was the Sublease itself, which he found while inspecting the file (at least, the district court may have thought so). Hence, CSA's complaint is not so much about the *source* of Janowski's knowledge, but about the conclusion that he drew from that source. This complaint, as we have said, appropriately takes the form of an objection based on Fed.R.Evid. 403 or Fed.R.Evid. 701—and as we have also said, these latter objections here were not made, and in any event, they would have proved unavailing.

*Id.* at 8–9. Defendant argues that in so holding we "not only recognized the personal knowledge requirement, but found that the facts of the case satisfied the concern of multiple hearsay that gives rise to the personal knowledge requirement." Appellant's Brief at 29–30. We do not agree. We did no more than delineate the contours of the ongoing debate on the applicability of the personal knowledge requirement. We did not have to take a position one way or the other because we found that the letter writer did have knowledge of the events on which he was commenting.

■ We are impressed by the fact that there is no requirement of personal knowledge in the Rule. The Notes of the Advisory Committee are a strong indication that such a requirement was knowingly and purposefully omitted. The case law leads in both directions but Judge Friendly's footnote comment on *Litton Systems* has much force.

In deciding this case we first consider what knowledge the nurses had. Although they were not present when Ronald fell, they knew that he had fallen and injured himself and that he had not been physically restrained in bed. Defendant does not dispute these facts. No-one would be more knowledgeable about bed restraints than a hospital nurse, except possibly a doctor. So although the nurses did not have personal knowledge of all the circumstances surrounding the fall, the information they did have, albeit based on hearsay, was accurate and by virtue of their training and

experience they were qualified to comment on whether or not a bed restraints should have been used. We are not dealing here with "gossip." There cannot be any doubt that the nurses' statements were admissions against the interest of the Hospital, made during the agency-employment relationship. The question of plaintiff's credibility was, of course, for the jury.

We hold that under the facts and circumstances of this case personal knowledge by the nurses was not necessary and the testimony of the plaintiff relating what the nurses told him about the advisability of a bed restraint was properly admitted.

### III. Ronald's Statements to His Mother

After considering submitted memoranda as well as oral argument, the district court ruled that statements made by Ronald to his mother approximately eleven hours after his fall were admissible under the "catch-all" hearsay exception, Fed.R.Evid. 804(b)(5). On appeal, the Hospital contends that Ronald's hearsay statements did not meet the requirements of that exception and, therefore, should have been excluded.

In order to explain this issue it must be placed in context. As already noted, there were two issues of negligence presented to the jury. The first was whether the Hospital was negligent in failing to restrain Ronald and is not pertinent to this evidentiary dispute. The second negligence issue, did the Hospital respond to Ronald's call within a reasonable time, implicates this evidentiary ruling.

At the time of Ronald's fall one of the Hospital nurses, Nurse Kennedy, was in the adjacent room. She testified that she heard a loud thump against the wall in Ronald's room and immediately left to investigate. She discovered Ronald on the floor and asked him what had happened. Based on what Ronald told her and her personal observations, she made the following notation on Ronald's clinical record: "Found pt [patient] on floor—Apparently crawled out end of bed—trying to get to BR [bathroom]—had called for help but not a quick enough response."

Approximately eleven hours after Ronald's fall, his parents arrived at the hospital unaware of the previous night's events. After learning from the station nurse that Ronald had fallen, the Brookovers went to their son in his hospital room and asked him what had happened. Over the Hospital's objection, Mrs. Brookover testified as follows:

> MRS. BROOKOVER: We ran into the room and we said, "Ron, what in the world's happened?" And he said, "Oh, Mother, I fell." He said, "I needed to go to the bathroom. I wanted to tinkle."
>
> ATTORNEY FELMLY: Is that the way he describes going to the bathroom?
>
> MRS. BROOKOVER: Yes. He said, "I put the call bell on," or the call light. He said, "I put the call bell on and I waited and I waited and no one came. I waited again and put the call bell on again two or three times." He'd keep a punching it he said. "And no one came to help me. And I called out, 'help! Help me!' and no one came." And he said, "Mother, I fell."
>
> ATTORNEY FELMLY: Did he tell you how he managed to fall or how it came to be that he actually fell after trying to use the call button?
>
> MRS. BROOKOVER: He showed me that he got out through the rails, the split rails. He was smaller than he is now. He told me, he said, "I got out through these rails, Mother. And I fell. I hit my head and I hit my leg." And he said, "The nurse came in finally when I fell and she was about mad at me. She bawled me out."

Following this testimony, Attorney Felmly showed Mrs. Brookover Nurse Kennedy's notations, *supra*, and asked her, through a series of questions, if the notations confirmed what Ronald had told her that next morning. Mrs. Brookover testified that the two were consistent.

There was additional testimony directly on the question whether the Hospital's response was tardy. Mrs. Brookover testified that a couple of days after Ronald's fall:

[Nurse Kennedy] came up in the hall, my husband and I was standing in the hall, and by Ron's room, and she said—she was crying and she said, "Mr. and Mrs. Brookover, I am so sorry. I just couldn't get to Ron. I was with another patient. We're so short-handed and I was with another patient and I couldn't get to Ron. The call light was on and I heard him call, but I couldn't get to him."

Nurse Kennedy, on direct examination, admitted apologizing to the Brookovers but denied ever telling them that the Hospital was short-staffed or that she had heard the call bell. On cross examination, Attorney Felmly brought out that in a deposition taken a year earlier, Nurse Kennedy stated that she did not remember exactly what she had told the Brookovers.

Fed.R.Evid. 804(b)(5) provides:

**(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

**(5) Other exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

A ruling on admissibility under the residual exceptions, (Rules 803(24) and 804(b)(5)) [4], is reviewed under the clearly

erroneous standard. This standard gives considerable discretion to the trial court's determination. Its ruling should not be disturbed "unless we have 'a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors.'" *United States v. Doe*, 860 F.2d 488, 491 (1st Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1961, 104 L.Ed.2d 430 (1989) (quoting, *Page v. Barko Hydraulics*, 673 F.2d 134, 140 (5th Cir.1982)).

General guidance on the use of the residual hearsay exceptions is found in the Senate Judiciary Committee Report, S.Rep. No. 1277, 93rd Cong., 2d Sess. 4, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7051, 7065–66, *also located in* Notes of Committee on the Judiciary, Senate Report No. 93–1277, appended to Fed.R.Evid. 803. The Judiciary Committee initially noted that the House version of the Rules completely rejected the residual hearsay exceptions, 803(24) and 804(b)(5), as "injecting 'too much uncertainty' into the law of evidence ..." 1974 U.S.Code Cong. & Admin.News at 7065. The Committee recognized, however, that:

... there are certain exceptional circumstances where evidence which is found by a court to have guarantees of trustworthiness equivalent to or exceeding the guarantees reflected by the presently listed exceptions ... could properly be admissible ...

The committee, however, also agrees with those supporters of the House version who felt that an overly broad residual hearsay exception could emasculate the hearsay rule and the recognized exceptions ...

It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances. The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall with one of the other exceptions contained in Rules 803 and 804(b). The residual exceptions are not meant to authorize ma-

---

**4.** Rules 803(24) and 804(b)(5) have identical language. The only difference between them is

that 804(b)(5) applies only if the declarant is unavailable as a witness.

jor judicial revisions of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by legislative action.

In order to establish a well-defined jurisprudence, the special facts and circumstances which, in the court's judgment, indicates that the statement has a sufficiently high degree of trustworthiness and necessity to justify its admission should be stated on the record . . .

*Id.* at 7065–7066. *Cited with approval in deMars v. Equitable Life Assurance Soc'y of United States,* 610 F.2d 55, 61 (1st Cir. 1979).

The Hospital has not challenged the unavailability of Ronald as a witness. Nor has any question been raised about the requirement of prior notice to the adverse party that the exception(s) will be invoked. We assume, therefore, that it was met. The Hospital's main attack against the admission of Ronald's statements as related by his mother stems from the Rule's requirement that the statements have "equivalent circumstantial guarantees of trustworthiness" to the other hearsay exceptions. The Hospital argues that because both Ronald and his mother are interested parties, because Ronald had a motive to fabricate and embellish the prior night events,[5] and because the statements lacked any contemporaneity with the event, Ronald's statements do not meet the "equivalent trustworthiness" requirement.

The case law on this issue reflects that the determination of equivalent trustworthiness is completely fact driven. In *Furtado v. Bishop,* 604 F.2d 80 (1st Cir.1979), appellant objected to the introduction of a letter written by an attorney who had died by the time of trial. *Id.* at 90. The trial judge admitted the letter pursuant to the residual exception on the basis that he knew the deceased to be an honorable man. This court questioned the judge's reason

for admitting the letter, but found other additional indicia of reliability from its own examination of the record and upheld the admission. *Id.* at 90–91. The court also stated that the weight to be given to the evidence was a matter for the jury to decide. *Id.* at 90.

Here, the trial judge did not explicitly state what indicia of reliability and trustworthiness he relied on for admitting Mrs. Brookover's testimony. This was contrary to the admonition in the Senate Committee notes and it would have been helpful to us had he done so. On the other hand we know that the trial judge was the beneficiary of both written memoranda and oral argument on the issue. We must assume that he understood the requirements and limitations of the Rule. There is nothing in the Rule itself that requires explicit findings.

■ No single factor is dispositive on the issue of whether evidence·should be admitted under the residual exception. The district judge must evaluate all of the factors and make a determination. In this case the judge made a careful decision after considering the arguments presented by both sides. Of course, Ronald's testimony would be the most probative on what happened in his room. The district judge also had the benefit of seeing Mrs. Brookover testify, and it was her credibility more than her son's that counted. In addition, the jury was able to evaluate the credibility of Mrs. Brookover's testimony and determine the weight it should be given.

Moreover, there is one strong, indeed almost irrefutable, indicia of reliability. The notes of Nurse Kennedy, which were clearly admissible and made within a short time after Ronald's fall corroborated what Mrs. Brookover testified Ronald told her eleven hours after the fall.[6] Nurse Kenne-

---

**5.** Appellant contends that because Ronald functioned at a twelve year old level and had been told on numerous occasions not to get out of bed without help, it was likely that he would make up a story so he would not be blamed for what happened.

**6.** Our dissenting brother stresses that the eleven hour passage of time between Ronald's fall and his statement to his mother means that the statements were not contemporaneous. Although the length of time is not so short as to insure its reliability, it does not necessarily indicate inaccuracy. The amount of time that elapsed is just one of many factors that the

dy wrote that she found Ronald on the floor, that he apparently crawled out of bed to get to the bathroom and significantly, "had called for help but not a quick enough response." Considering all the relevant factors we cannot say that "we have a definite and firm conviction that the court made a clear error of judgment" in admitting Mrs. Brookover's testimony. *United States v. Doe,* 860 F.2d at 491.[7]

■ Our dissenting brother makes a logical and compelling argument that Mrs. Brookover's statement should not have been admitted under Fed.R.Evid. 804(b)(5), and on this basis he would send the case back for a new trial. We think, however, that he overlooks the fact that the real negligence in this case was not the response to Ronald's bell call but the hospital's failure to put restraints on this mentally retarded boy who had just been in the hospital for an operation that cut his brain in two. In our judgment, the evidence of negligence on the part of the hospital in failing to put restraints on Ronald was so overwhelming that it completely eradicates the question of whether the hospital was negligent in failing to respond to Ronald's call with reasonable alacrity. In our opinion, if Ronald had gotten out of bed without pressing the call button at all and fallen, the hospital would be liable. We do not think it fair to penalize the plaintiffs in this case because the district court may have erred in admitting evidence on a subsidiary issue. The evidence establishes clearly that Ronald would not have fallen if he had been restrained. Lack of restraints was the primary, and in effect, the sole cause of the accident.

Thus, even if its admission be deemed error, our review of the record as a whole convinces us that if there was error it was harmless. *See United States v. Ladd,* 877 F.2d 1083, 1086 (1st Cir.1989); *deMars v. Equitable Life Assurance Soc. of U.S.,* 610 F.2d 55, 61–62 (1st Cir.1979). Error is harmless if it does not affect the substantial rights of the parties. Fed.R.Civ.P. 61. The primary issue in this case was whether Ronald, a mentally retarded person with a history of serious falls, should have been restrained after undergoing an operation in which his brain was halved. Only if the jury determined that Ronald should not have been restrained would they have even considered the issue of the hospital's slow response time to Ronald's request for help. There was extensive and credible evidence on the restraint issue that showed the severity of Ronald's condition, his history of falls and injuries from falls, the hospital's practice of using restraints and even the hospital's use of restraints on Ronald during the earlier visit. Given this wealth of evidence, the jury could easily have found that the hospital was negligent in not restraining Ronald.

AFFIRMED.

JOHN R. BROWN, Senior Circuit Judge, concurring.

I concur without qualification. With respect to the testimony of Ronald's mother about what happened, I would add to Judge Bownes' powerful statements two things.

The first is that F.R.Civ.P. 61 requires the trial (and this Court) to "disregard any error or defect ... which does not affect the substantial rights of the parties." Moreover, this is not only the congressional direction from the rule approval process. 28 U.S.C. §§ 2072 and 2074. Rather, it is the direct command of Congress that on the hearing of any appeal "... the court shall give judgment ... without regard to errors or defects which do not affect the

district court judge considered in admitting the testimony. Courts have admitted statements under this exception that were made a much longer time after the incident than the one at issue here. *See, e.g., United States v. Van Lufkins,* 676 F.2d 1189 (8th Cir.1982) (up to a week passed between the event and the hearsay statement to the witness) (cited with favor in *United States v. Vretta,* 790 F.2d 651, 659 (7th Cir.1986); *Furtado v. Bishop,* 604 F.2d at 91 (affidavit ad- mitted although written more than eight months after incident). In addition, the conversation at issue was the first time that the Brookovers were able to speak with Ronald after his fall.

**7.** Indeed, in light of the nurse's notations as to how the accident happened, it is hard to understand why Mrs. Brookover's testimony was offered.

substantial rights of the parties." 28 U.S.C. § 2111.

The issue of timeliness of nurses' responses to Ronald's was, to be sure, nominally in the case. But the only real controversy was whether a patient with Ronald's history should have been moderately restrained. What Ronald's mother said Ronald said did not touch that problem. The jury could, and probably did, ignore the inconsequential question whether the nurses on duty jumped fast enough.

BREYER, Circuit Judge (dissenting).

In order to admit into evidence the hearsay statement of an unavailable declarant under Fed.R.Evid. 804(b)(5)'s residual hearsay exception, a court must find "circumstantial guarantees" of the statement's "trustworthiness" that are "equivalent" to those found in the Rule's other exceptions for (1) former testimony subject to somewhat similar cross examination, (2) a statement made under belief of impending death, (3) a statement against interest, and (4) a statement of personal or family history. Fed.R.Evid 804(b)(1–4). *See* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 804(b)(5)[01], at 804–173 (1988) ("[T]he courts have admitted hearsay statements pursuant to Rule 804(b)(5) when a trustworthiness within the spirit of the Rule 804 class exceptions has been demonstrated.") [hereinafter *Weinstein's Evidence*]. Where can the court find such guarantees with respect to Ronald's statements, made to his mother the day following his accident, that he "put the call bell on," "waited and ... waited," and "put the call bell on again two or three times" before he left the bed and fell?

The majority finds such a guarantee in hospital notes that Nurse Kennedy wrote, notes that say,

> Found pt on floor—apparently crawled out of end of bed—trying to get to BR—had called for help but not quick enough response

These notes, however, do not indicate whether Nurse Kennedy meant the last phrase—"not quick enough response"—as evaluating the situation or as stating the obvious (that the response was not quick enough to prevent the fall), or, if the former, whether the evaluation is her own or Ronald's. No other corroborating evidence was ever introduced; on the contrary, Nurse Call testified that she arrived in Ronald's room "between 30 and 45 seconds" after hearing "Ron's bell go off" and found Nurse Kennedy already there. Where in this is there any special "guarantee" of "trustworthiness" for the relevant portion of Ronald's statement, the assertion of a significant lapse of time between his signalling for help and the nurses' response?

There is no special "guarantee" of "trustworthiness" in the fact that Ronald is retarded. He may not have been capable of understanding how his statement ("I waited and waited") might be used to show the hospital's liability, but he was perfectly capable of understanding that he was not supposed to get out of bed on his own, and he would seem as capable as anyone else of exaggerating the wait to disown his own fault. *Cf. United States v. York*, 852 F.2d 221, 226 (7th Cir.1988) (excluding statements of fourteen year-old witness partly because he "had a motive to misrepresent the truth"); *id.* at 225 ("critical" factor in trustworthiness analysis is "whether the hearsay declarant had a motive to lie") (internal quotation marks omitted); *United States v. Ferri*, 778 F.2d 985, 991 (3d Cir. 1985) (same). Nor can one find a "guarantee" of "trustworthiness" in the timing of his statement, for he made it, not contemporaneous with the accident, but, rather, the next morning. *Cf. United States v. Vretta*, 790 F.2d 651, 659 (7th Cir.1986) ("[C]lose proximity in time between the statement [describing the event] and the [event] itself lends support to the statement's trustworthiness.") And, I do not see how one can find a special "guarantee" in the fact that his mother testified that he was a very truthful person.

In fact, to permit admission of this statement simply because Nurse Kennedy's note provides some weak, and highly controverted, corroboration is to eliminate any legal requirement of special "trustworthiness."

It is, in essence, to read the "residual" hearsay exception as allowing the district court to admit any hearsay for which it finds a special need. Such a reading seems wrong, *see United States v. McCall*, 740 F.2d 1331, 1342 (Widener, J., concurring) (where evidence of reliability is weak, "[m]ere unavailability ... is an insufficient reason to justify the admissibility of [hearsay] statements"), for it is contrary to the intent of Congress. Indeed, the House of Representatives initially voted not to permit a residual hearsay exception precisely because it feared such a result. *See* House Comm. on the Judiciary, Report on Federal Rules of Evidence, H.R.Rep. No. 650, 93d Cong., 1st Sess. (1973), 1974 U.S.Code Cong. & Admin.News 7051. The House withdrew its opposition only when the Senate narrowed the scope of the exception and instructed courts that it "intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances," Senate Comm. on the Judiciary, Report on Federal Rules of Evidence, S.Rep. No. 1277, 93d Cong., 2d Sess. 18–20 (1974), 1974 U.S.Code Cong. & Admin. News 7066. The Senate Committee admonished courts applying 804(b)(5) to "exercise no less care, reflection and caution than the courts did under the common law in establishing the now-recognized exceptions to the hearsay rule." *Id.* at 20, 1974 U.S. Code Cong. & Admin.News 7066. Failure by the lower court here to identify specific "guarantees" of the "trustworthiness" of Ronald's statements suggests that the admission of these statements was not preceded by sufficient "reflection and caution."

I can find no case admitting hearsay under circumstances like those present here. *Furtado, supra,* which involved a lawyer's out-of-court statement made under oath, certainly does not. Nor do *United States v. Carlson*, 547 F.2d 1346 (8th Cir.1976) and *United States v. Murphy,* 696 F.2d 282 (4th Cir.1982), the other two cases cited by appellee. *Carlson* and *Murphy* both involved grand jury testimony which, at least in the case of *Murphy*, was supported by "strongly corroborative testimony and proof, some of which was unim-

peachable." 696 F.2d at 286. Cases admitting hearsay under Rule 804(b)(5) involve substantially greater guarantees of reliability than those present here. *See Weinstein's Evidence* ¶ 804(b)(5) [01], at 804–173 n. 3 (collecting cases).

I understand still less how the majority can say the admission of the statement was "harmless." The district court admitted it because of need. Plaintiff's counsel told the court, "I can't create a more severe need.... It's critical to the plaintiff's case." Virtually the only other evidence that plaintiff had to convince the jury that the hospital waited too long to answer Ronald's call consisted of Nurse Kennedy's notes. Nurse Kennedy and Nurse Call refuted the implication of those notes. Without Ronald's testimony, the jury might well have believed the nurses.

Of course, the plaintiff also argued that the hospital's decision not to restrain Ronald was negligent. But Nurse Call testified that Ronald "wasn't" the "sort of patient that required restraints," and that "there wasn't" any reason "to restrain him" on the relevant evening. Other witnesses testified to the same effect. A juror, uncertain about whether plaintiff had proved the hospital should have used restraints, might well have turned to Ronald's statement that he "waited and waited," and thought, "At least, if they didn't restrain him, they should have responded quicker." How can the court know that the jurors (or some of them) did not reason in this way? How can it say "with fair assurance" that the jury "was not substantially swayed" by Ronald's unlawfully admitted statement? *See Vincent v. Louis Marx & Co.,* 874 F.2d 36, 41 (1st Cir.1989) (describing test for harmless error).

Since I believe the Federal Rules of Evidence do not permit admission of Ronald's hearsay statements and that their admission was not harmless, I must dissent.